HOWARD C. KIM, ESQ. (SBN 10386)
E-mail: howard@hkimlaw.com
DIANA CLINE EBRON, ESQ. (SBN 10580)
E-mail: diana@hkimlaw.com
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
E-mail: jackie@hkimlaw.com
JESSE N. PANOFF, ESQ. (SBN 10951)
E-mail: jesse@hkimlaw.com
HOWARD KIM & ASSOCIATES
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
Telephone: (702) 485-3300
Facsimile:  (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, in its capacity as Conservator of Federal National Mortgage Association and Federal Home Loan Mortgage Corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION; and FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada Domestic Limited Liability Company; NEVADA NEW BUILDS, LLC, a Nevada Domestic Limited Liability Company; and LAS VEGAS DEVELOPMENT GROUP, LLC, a Nevada Domestic Limited Liability Company,<br><br>Defendants. | Case No.: 2:15-cv-01338-GMN-CWH<br><br>**SFR INVESTMENTS POOL 1, LLC's RESPONSE TO PLAINTIFFS' MOTION FOR CERTIFICATION [DKT. NO. 23]** |

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

## I.   INTRODUCTION

First, Plaintiffs' Corrected First Amended Complaint ("FAC") wanted to transform due process deprivations into "preemption." Now, Plaintiffs' Motion for Class Certification seeks to replace "proof" of satisfying FRCP 23's requirements with "preemption." Such a desire contravenes a series of recent United States Supreme Court decisions construing 23 certification. *See infra* Part III.A. "Those decisions have made clear that plaintiffs wishing to proceed through

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . . ." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. ___, 134 S.Ct. 2398, 2413 (2014). In this case, Plaintiffs simply plead—rather than actually *prove*—23's requirements, hoping to gloss over this shortcoming by droning on about so-called "preemption."

Additionally, the phrase "Enterprise Lien" permeates the FAC, Plaintiffs' Motion, and the definition of Plaintiffs' proposed *defendant* class. *See infra* Part II.A-D. The term "Enterprise Lien" describes a mortgage that the Federal Home Loan Mortgage Corporation ("Freddie") or the Federal National Mortgage Association ("Fannie") (collectively "Enterprises") allegedly "owned" "at the time of the HOA Foreclosure Sale." FAC, 4:20-22; Pls.' Mot. for Certification ("Mot."), 15:6. Plaintiffs refuse to offer any proof regarding a single "Enterprise Lien" that was purportedly on a single house that was sold at a single homeowners' association ("association") foreclosure sale. As is detailed below, the absence of proof regarding the Enterprises' alleged "ownership" of "Enterprise Liens" precludes this Court from conducting a "rigorous analysis" necessary before certifying a class action. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Under such circumstances, certification would be reversible error because it would be predicated on improper legal criteria. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980-81 (9th Cir. 2011). At bottom, Plaintiffs' Motion should be denied. They—no less than any other litigant demanding class certification—must "actually *prove*—not simply plead—that their proposed class satisfies" 23. *Halliburton*, 134 S.Ct. at 2413. Plaintiffs' inability to do so precludes certification.

## II.   PLAINTIFFS' ALLEGATIONS

### A.   The Proposed Class

The proposed defendant class consists of current owners of houses "to which: (1) HOA Foreclosure Sales have been or will be completed on or after September 18, 2009, (2) an Enterprise Lien had attached and had not been satisfied at the time of the applicable HOA Foreclosure Sale, and (3) the Court may assume and exercise in rem jurisdiction." FAC, 5:6-9. The phrase "Enterprise Lien" is central to this class definition. *Id.* at 3:8-12, 5:5-9, 6:26-28 - 7:1-2, 15:19-23.

### B.   "Enterprise Lien" is Central to the Proposed Class' Definition

"Enterprise Lien" describes individual mortgages that Freddie, Fannie, or the Federal

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Housing Finance Agency ("FHFA") allegedly "own." *Id.* at 4:20-22. So, for a house's current owner to be in the proposed class, an Enterprise must have "owned" that house's mortgage "at the time of the applicable" association sale. *Id.* The FAC lacks any evidence of "ownership." Instead, Plaintiffs attached charts from the Nevada Real Estate Division ("NRED") that supposedly contain information about 3,055 association sales from September 18, 2009, through June 30, 2015. *Id.* at 16:3, Ex. 59.

### C.   The Phrase "Enterprise Lien" Permeates the FAC

In addition to animating the proposed class' definition, the phrase "Enterprise Lien" permeates the FAC, playing critical roles in allegations concerning: (i) what this case is about, *id.* at 2:9-20, 8:15-18, (ii) FHFA's ability to bring this lawsuit, *id.* at 5:21-24, 19:13, 21:6-8, (iii) the parties' competing interests in the houses, *id.* at 3:15-18, 4:20-22, 8:28, 9:18-19, 10:18-19, 11:15-16, 12:14, 13:17, 14:16, 22:1-3, (iv) Defendants' alleged violations of federal law, *id.* at 20:3-5, 21:9-10, and (v) Plaintiffs' requested relief, *id.* at 2:9-20, 20:13-19, 21:1-3, 21:16-23, 22:4-16, 22:20-28 – 23:1-25.

Furthermore, "Enterprise Lien" pervades the FAC's *class action averments* regarding: (i) commonality, *id.* at 16:17-22, (ii) typicality, *id.* at 17:23-24 – 18:1-6, (iii) ascertainability, *id.* at 17:19-21, (iv) numerosity, *id.* at 16:14-16, (v) adequacy of representation, *id.* at 17:7-18, (vi) 23(b)(1)(B), *id.* at 18:10-15, (vii) 23(b)(2), *id.* at 18:7, and (viii) the purported 23(c)(4) "particular issue." *Id.* at 4:9-11, 16:18-22, 18:18-20.

### D.   Enterprises' Alleged Interests & Injuries

"Enterprise Lien" has such prominence because Plaintiffs allege that when an Enterprise "purchases" a mortgage, the Enterprise obtains "a property interest in the [house] that secure[s] the mortgage . . . ." *Id.* at 6:12-13, 19:4-5. This interest, according to Plaintiffs, exists regardless of whether it is recorded. *Id.* at 20:15. At the same time, Plaintiffs admit that *under Nevada law*, association sales extinguish "Enterprise Liens." *Id.* at 3:4-6, 17:23-24.

### E.   The Proposed Class Representatives

Plaintiffs sued three entities, naming them as proposed class representatives: SFR Investments Pool 1, LLC ("SFR"), Nevada New Builds, LLC ("NNB"), and Las Vegas

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Development Group, LLC ("LVDG") (collectively "Defendants"). *Id.* at 8:19. The FAC describes Defendants—and the houses that they own—as being "unique." *Id.* at 16:15, 22:4; Mot., 8:21. Particularly, the FAC discussed seven different association sales of seven different houses; SFR owns five, and the remaining Defendants own one house each. FAC, 8:19-28 – 15:1-10. Supposedly, Freddie purchased two and Fannie bought three mortgages connected with SFR's five houses. *Id.* at 9:7, 10:5-6, 11:5-6, 12:1-2, 13:2. Fannie allegedly purchased the mortgages on NNB and LVDG's houses. *Id.* at 14:2, 14:20.

F.     **Plaintiffs' Claims & Motion for Certification**

Plaintiffs sued Defendants for quiet title, declaratory relief, and injunctive relief. *Id.* at 18:21-26 – 22:1-16. One day after filing the FAC, Plaintiffs moved for class certification. *Compare* Dkt. No. 22 (FAC filed Oct. 1, 2015), *with* Dkt. No. 23 (Mot. filed Oct. 2, 2015). The Motion for Certification was bereft of evidence that Plaintiffs owned a single mortgage referenced in the FAC; no proof was offered about any so-called "Enterprise Lien." Plaintiffs simply assured this Court that information in their business records confirmed ownership. Mot., 15:4-6, 15:17-21, 16:3-14. Yet, the Motion provided no details about this "information" or "business records." *Id.* Certification, in Plaintiffs' estimation, comported with 23(b)(1)(B) and 23(b)(2), and should be limited to "the single issue of whether" 12 U.S.C. § 4617(j)(3) preempts NRS 116.3116. *Id.* at 4:14-15, 21:6-7, 21:11-12.

III.     **LEGAL ARGUMENT**

A.     **Plaintiffs Ignored the Supreme Court's Analytical Approach to FRCP 23**

The United States Supreme Court recently issued a series of decisions construing FRCP 23. *Halliburton*, 134 S.Ct. 2398; *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S.Ct. 1426 (2013); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. ___, 133 S.Ct. 1184 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541 (2011). In doing so, the Court articulated its analytical approach to 23: "Those decisions have made clear that plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . . ." *Halliburton*, 134 S.Ct. at 2413; *Dukes*, 131 S.Ct. at 2551. Plaintiffs must prove all of 23(a)(1)-(4)'s class action prerequisites, and one of the three

- 4 -

requirements contained in 23(b). *Id.* For instance, litigants attempt to prove certification's propriety with expert reports, declarations, discovery responses, and internal documents. *Parsons v. Ryan*, 754 F.3d 657, 680, 683 (9th Cir. 2014). In turn, district courts subject this *proof* to "rigorous analysis," ensuring certification occurs "only if" plaintiffs prove 23's requirements. FRCP 23(a); *Comcast*, 133 S.Ct. at 1432; *Dukes*, 131 S.Ct. at 2551. If plaintiffs offer no proof, then a court cannot conduct a "rigorous analysis," which precludes it from certifying a class. *Id.* Certification without a "rigorous analysis" is reversible error; so too is certifying a class based on improper legal criteria. *Ellis*, 657 F.3d at 980-81.

Here, Plaintiffs do not prove 23's requirements. No expert reports, declarations, discovery responses, or internal documents are provided in support of certification. Rather, they argue that certification is proper because of "preemption," an issue that Plaintiffs believe causes transaction-specific facts to be irrelevant. Mot., 10:6-8, 11:14-15, 21:17-21. In short, Plaintiffs want to replace "proof" with "preemption." Nearly every one of Plaintiffs' arguments hinges on preemption; Plaintiffs assert that so-called "preemption" demonstrates commonality, typicality, adequacy of representation, the permissibility of maintaining a defendant class under 23(b)(2) or 23(b)(1)(B), and the advisability of this Court certifying a single-issue class through 23(c)(4)—apparently all without this Court having to evaluate transaction-specific facts. *Id.* at 9:6-23 – 10:1-11, 11:5-16, 12:13-16, 17:13-16, 19:14-20, 21:6-7.

More precisely, Plaintiffs insist that 4617(j)(3) "preempts" Nevada law, thereby precluding an association sale from extinguishing an "Enterprise Lien." *Id.* at 3:17-20. The existence of an "Enterprise Lien" is thus critical to Plaintiffs' "preemption" position that an association's *individual transaction* of selling a house did not extinguish the "Enterprise Lien" on that house. In Plaintiffs' view, "preemption" does not depend on transaction-specific facts or proof. *Id.* at 10:6-8, 11:14-15, 21:17-21. Plaintiffs are wrong. The centrality of "Enterprise Liens" to the issue of "preemption" means that at least one transaction-specific fact necessitates proof: Did an Enterprise "own" a mortgage on a house "at the time of the" association's foreclosure? FAC, 4:20. If an Enterprise did not so "own" a mortgage during this individual transaction, then there was no "Enterprise Lien" that 4617(j)(3) purportedly shielded from extinguishment. *Id.* The absence of an

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

"Enterprise Lien" is a transaction-specific fact, which is also a "transaction-specific defense" to "preemption"—no "Enterprise Lien," no "preemption."

Indeed, Plaintiffs concede that "transaction-specific . . . defenses cannot be litigated on a class-wide basis." Mot., 21:25-26. Such a concession—especially in light of the pervasive role of "Enterprise Liens" within Plaintiffs' "preemption" position—defeats Plaintiffs' attempt to replace "proof" with "preemption." Despite admitting that "transaction-specific" defenses preclude certification, and irrespective of the significance of "Enterprise Liens," Plaintiffs refuse to *prove* that an Enterprise actually owned a single "Enterprise Lien"—not even one of the five that were purportedly on SFR's houses mentioned in the FAC. Plaintiffs' refusal to prove "ownership" not only contravenes binding Supreme Court certification precedent, but it also prevents Defendants from raising the "transaction-specific defense" of non-ownership of an "Enterprise Lien." To make matters worse, only Plaintiffs have access to proof of ownership; neither this Court nor Defendants have ownership evidence. At bottom, Plaintiffs' attempt to replace "proof" with "preemption," and refusal to provide evidence about ownership of "Enterprise Liens," ignored the Supreme Court's analytical approach to 23.

### B. This Court cannot Conduct a "Rigorous Analysis"

Plaintiffs' refusal to offer evidence regarding ownership of "Enterprise Liens," means that this Court cannot conduct a "rigorous analysis" of whether Plaintiffs have "actually *prove[d]* . . . that their proposed class satisfies each requirement of Rule 23 . . . ." *Halliburton*, 134 S.Ct. at 2413; *Dukes*, 131 S.Ct. at 2551. There simply is no proof of ownership for this Court to rigorously analyze. Yet such proof exists, consisting of specific documents that purportedly memorialize Fannie or Freddie's acquisition of a mortgage, and whether a mortgage has been securitized. Ex. A, 15:11-13, 42:12-16, 43:10-14, 44:1-5, 48:23-24, 50:16-24, 63:3-5, 79:21-25. (Dep. Tr. of Dean J. Meyer). As elaborated in Defendants' Motion to Dismiss and Motion to Sever, if a mortgage is securitized, then it is owned by a trust, not by an Enterprise.[1] Dkt. No. 46, 25:2-22; Dkt. No. 48, 5:7-17. Regrettably, Plaintiffs have not provided these documents to this Court in other 4617(j)(3) cases. Instead, Plaintiffs usually offer a brief declaration from a Fannie or Freddie employee and

---

[1] The Motion to Dismiss' and Motion to Sever's arguments are incorporated herein by reference.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

a handful of so-called "printouts," which allegedly demonstrate ownership. Ex. B. Interestingly, Dean J. Meyer works for Freddie and has provided declarations in at least two 4617(j)(3) cases. Ex. C. On March 29, 2012, Mr. Meyer was deposed in a federal case in the Western District of Missouri. The deposition's transcript was filed as document 69-1 and is attached hereto as Exhibit A. During this deposition, Mr. Meyer identified particular documents that allegedly indicate the acquisition and securitization of an "Enterprise Lien." Ex. A, 15:11-13, 42:12-16, 43:10-14, 44:1-5, 48:23-24, 50:16-24, 63:3-5, 79:21-25.

Specifically, Mr. Meyer described the following documents:

- Master Commitment;

- Master Agreement;

- Pooling Agreement; and

- Records of wire transfers from Freddie to a bank.

The Master Commitment and Master Agreement "are just on how we purchased the loan, under what terms we purchased the loan." *Id.* at 15:12-13. The **Master Commitment** is "a purchase agreement. Attached to that, it would list the loans that were purchased at that time from [the bank]." *Id.* at 43:12-14. It "says we will purchase this set of loans." *Id.* at 43:3-4. Mr. Meyer elaborated on the type of information contained in a Master Commitment, "it would have [the bank's] loan number at the time, and then I believe it would have the homeowners' name, maybe have the property address and the loan amount, note rate, things of that nature." *Id.* at 44:1-5. Turning to the **Master Agreement**, "it just says under these terms we will purchase notes from a seller." *Id.* at 48:23-24. Mr. Meyer stated that the Master Agreement delineates the terms and conditions that must be met for Freddie to buy a mortgage. *Id.* at 50:16-24. According to Mr. Meyer, after Freddie supposedly acquires a mortgage, it can securitize it by selling the mortgage to a trust, doing so through a Pooling Agreement. *Id.* at 63:3-7, 79:21-25. Mr. Meyer observed that a **Pooling Agreement** contains "the terms of when it was sold into the trust." *Id.* at 63:5. Also, he testified that when Freddie buys mortgages from a bank, it retains **Records** of wire transactions or checks. *Id.* at 42:12-16. Regardless of the method of payment, Freddie has records of money going from Freddie to a bank in exchange for a mortgage. *Id.* at 41:24-25, 42:1-16. Based on Mr. Meyer's

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

deposition testimony, the Master Commitment, Master Agreement, Pooling Agreement, and Records of wire transactions are supposed proof of an Enterprise's acquisition and subsequent securitization of a mortgage. Such proof is what this Court needs to "rigorously analyze" before certifying the proposed defendant class action.

Importantly, an informational imbalance exists between Plaintiffs and SFR, one that implicates due process because "the Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 288 n.4 (1974). Currently, Plaintiffs presumably have access to Master Commitments, Master Agreements, Pooling Agreements, and Records of payment concerning the purported five "Enterprise Liens" on SFR's houses identified in the FAC. SFR does not have any of these documents or information. But, Plaintiffs' decision to sue SFR—along with the other named Defendants and proposed class members—was likely based on the aforementioned documents. Likewise, Plaintiffs' decision to request certification was premised on "information already reflected in Plaintiffs' business records . . . ." Mot., 15:3-4. Hence, if this Court certifies a class it will ratify decisions by an agency (i.e. FHFA) that were based on evidence that Defendants never had an opportunity to review or contest. Under these circumstances, certification would deprive Defendants of due process because Defendants would not have had "an opportunity to offer a contrary presentation." *Bowman*, 419 U.S. at 288 n.4. In fact, Defendants and this Court do not know the facts contained in those documents, and unless Plaintiffs reveal those documents, "there is no way to find them out." *Ohio Bell Tel. Co. v. Pub. Util. Comm'n of Ohio*, 301 U.S. 292, 302 (1937). Certification, in short, cannot occur without Defendants and this Court having an opportunity to review the aforementioned documents described by Mr. Meyer. All told, this Court cannot conduct a "rigorous analysis."

### C.     Plaintiffs did not Prove 23(a)(1) Numerosity

As mentioned above, Plaintiffs must prove every requirement contained in 23(a)(1)-(4), including "numerosity." *Halliburton*, 134 S.Ct. at 2413; *Dukes*, 131 S.Ct. at 2551. Under 23(a)(1), "[o]ne or more members of a class may . . . be sued as representative parties on behalf of all members only if . . . the class is so numerous that joinder of all members is impracticable . . . ."

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1    Speculation cannot prove numerosity, *Paul v. Winco Foods, Inc.*, No. 02-cv-381-S-EJL, 2007 WL

2    1381794, at *2 (D. Idaho Feb. 16, 2007), and "sales volume standing alone cannot serve as the

3    basis of a numerosity finding in this case." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D.

4    Cal. 1999).

5          Here, Plaintiffs note that information from NRED supposedly indicates that 3,055

6    association sales occurred from September 18, 2009, through June 30, 2015. Based on this number,

7    Plaintiffs impermissibly *speculate* that such sales "*likely* involved dozens of unique purchasers"

8    and "[g]iven the Enterprises' combined market share between September 18, 2009 and the present

9    . . . Enterprise Liens encumbered a sizeable percentage of these properties at the time of the HOA

10   foreclosure sales." Mot., 8:16-18, 8:20-21. Such speculation disregards the Supreme Court's

11   insistence that plaintiffs requesting certification must "be prepared to prove that there are *in fact*

12   sufficiently numerous parties . . . ." *Dukes*, 131 S.Ct. at 2551. Plaintiffs' failure to "prove . . . in

13   fact" numerosity prevents certification, irrespective of NRED's information on sales volume.

14         Moreover, in this case, sales volume standing alone cannot establish numerosity because

15   Plaintiffs admit that "[s]ome but not all of the properties identified in the [NRED] dataset . . . were

16   encumbered by Enterprise Liens . . . ." Mot., 15:15-16. Unlike *Delarosa v. Boiron, Inc.*, 275 F.R.D.

17   582 (C.D. Cal. 2011)—which Plaintiffs cited and involved consumers buying a homeopathic cold

18   medicine that contained the same allegedly false statements on every bottle—this case's

19   numerosity inquiry turns on a purported fact in addition to an item's purchase or sale.[2] That

20   additional fact is whether an "Enterprise Lien" was on a house "at the time of the HOA foreclosure

21   sale." Mot., 15:6. Because this case implicates a purported fact in addition to a house's purchase,

22   it is more akin to *Schwartz*, a suit brought by a proposed class of consumers who bought packs of

23

24   [2] Plaintiffs' remaining numerosity cases are equally inapposite. *Harris* was issued before the 1966
     amendments to 23 and the Supreme Court's recent line of class action decisions. Perhaps, these

25   temporal considerations explain why *Harris* incorrectly placed a burden of proving numerosity on
     the party opposing certification, something directly contrary to Supreme Court precedent. *Harris*

26   *v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). *Ikonen* is unpersuasive
     because it allowed numerosity to be inferred from facts, rather than requiring the party requesting

27   certification to *prove* numerosity; this country's highest court demands proof. *Ikonen v. Hartz
     Mountain Corp.*, 122 F.R.D. 258, 261 (S.D. Cal. 1988). *Benito* is unilluminating because it lacks

28   meaningful analysis regarding numerosity. *Benito v. Indymac Mortg. Services*, No. 2:09-cv-
     001218-PMP-PAL, 2010 WL 2089297 (D. Nev. May 21, 2010).

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1   sports trading cards that potentially contained special "chase or insert cards." *Schwartz*, 183 F.R.D.

2   at 675. When the *Schwartz* consumers bought sports trading cards they did not know if the pack

3   contained "chase or insert cards"—just like SFR did not know whether a house it acquired at an

4   association sale contained an alleged "Enterprise Lien." Nevertheless, Plaintiffs can begin to *prove*

5   numerosity by giving SFR and this Court a list of houses—identified by property addresses—that

6   Plaintiffs believe are involved in the proposed class. Such a list would be the beginning, and not

7   the end, of Plaintiffs proving numerosity. Ultimately, Plaintiffs did not prove 23(a)(1) numerosity.

8        **D.**    <u>**Plaintiffs did not Prove 23(a)(2) Commonality**</u>

9        "Commonality" is the second requirement from 23(a) that Plaintiffs must prove. Pursuant

10   to 23(a)(2), certification occurs "only if . . . there are questions of law or fact common to the class

11   . . . ." Resolving this assessment depends on a claim's elements; if a claim necessitates

12   individualized inquiries, then commonality does not exist. *Jimenez v. Allstate Ins. Co.*, 765 F.3d

13   1161, 1165, 1167 (9th Cir. 2014); *Parsons v. Ryan*, 754 F.3d 657, 676, 678 (9th Cir. 2014);

14   *Stockwell v. San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014); *Thomasson v. GC Services Ltd.*

15   *P'ship*, 539 F. App'x 809, 810 (9th Cir. 2013).

16        Here, one of Plaintiffs' claims is for quiet title, which requires a litigant to prove that she

17   has a superior interest in an individual property, such as a house. NRS 40.010; *Chapman v.*

18   *Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Individualized inquiries

19   pervade. For starters, property in general and houses in particular are unique. *Shuette v. Beazer*

20   *Homes Holdings Corp.*, 124 P.3d 530, 542 (Nev. 2005). Even Plaintiffs have candidly discussed

21   "the uniqueness of the properties involved here . . . ." FAC, 22:4-5. Houses are so unique that the

22   Nevada Supreme Court has determined that class actions are usually inappropriate for prosecuting

23   construction defects on single-family houses. *Shuette*, 124 P.3d at 542. The unique nature of

24   property translates into unique property rights, which Plaintiffs seek to resolve through their quiet

25   title claim. Resolution of these individualized and unique rights, however, involve the transaction-

26   specific fact of whether Fannie or Freddie "owned" an "Enterprise Lien" "at the time of the HOA

27   foreclosure sale." Mot., 15:6. This is so because Plaintiffs' supposed interests in Defendants'

28   houses allegedly emanate from "Enterprise Liens." FAC, 6:12-13, 19:4-5. Similarly, and for

**HOWARD KIM & ASSOCIATES**
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

purposes of a quiet title claim, the individualized issue of Plaintiffs' "ownership" must be considered in light of other individual facts, including individual mortgages, houses, association sales, and purchasers. *McKnight Family, LLP v. Adept Mgmt. Services, Inc.*, 310 P.3d 555, 559 (Nev. 2013) (quiet title "claim directly relates to an individual's right to possess and use his or her property."); *Chapman*, 302 P.3d at 1106 (right to relief depends on superiority of interest in particular property). And so, Plaintiffs cannot prove 23(a)(2) commonality because their quiet title claim triggers individualized inquiries, reflecting what Plaintiffs have described as "the uniqueness of the properties involved here . . . ." FAC, 22:4-5.

Furthermore, 23(a)(2)'s text compels a court to focus its commonality inquiry "*to the class.*" FRCP 23(a)(2) (emphasis added). The issue is whether there are "questions of law or fact common *to the class.*" *Id.* (emphasis added); *Halliburton*, 134 S.Ct. at 2413; *Dukes*, 131 S.Ct. at 2551. Such a class-centric approach influenced how the Supreme Court recently defined "commonality" for *plaintiff* classes, "commonality requires the *plaintiff* to demonstrate that the *class members* 'have suffered the same injury[.]' This does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S.Ct. at 2551 (internal citation omitted). And, a *plaintiff* class' claims must depend on a common contention "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of *each* one of the [plaintiffs'] claims in one stroke." *Id.* This analysis focused on *the class*, just as 23(a)(2)'s text commands. To repeat, when the Supreme Court defined "commonality" *the class* consisted of *plaintiffs*. *Id.* But if the class is comprised of *defendants*, then "commonality" should be evaluated as to *defendants*, not as to *plaintiffs*.

Here, Plaintiffs applied the Supreme Court's "commonality" definition and analysis to *Plaintiffs'* claims. Mot., 9:20-23. Plaintiffs argue that resolving the so-called "preemption" issue— which Plaintiffs describe as whether 4617(j)(3) "preempts" Nevada law, thereby prohibiting an association sale from extinguishing an "Enterprise Lien"—will determine an issue that is central to "the validity of each one of [*Plaintiffs'*] claims in one stroke." *Id.* (quoting *Dukes*, 131 S.Ct. at 2551). Yet, in this case Plaintiffs are not the proposed class; *Defendants* are. Thus, Plaintiffs' commonality positions focus on the wrong parties, and do not calibrate the Supreme Court's

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

"commonality" definition and analysis to the defendant-class-context. By not calibrating "commonality" to the defendant-class-context, Plaintiffs' positions are premised on an incorrect legal standard, which cannot serve as the basis for class certification. *Ellis*, 657 F.3d at 980-81. Indeed, it is reversible error for a district court to certify a class based on an improper legal standard. *Id.*; *Stockwell*, 749 F.3d at 1114. Besides, Plaintiffs' belief that "preemption" will be "dispositive of the entire controversy" without any factual considerations is misguided because of the transaction-specific defense concerning ownership of "Enterprise Liens." Mot., 10:6-8. Recall that Plaintiffs have conceded that transaction-specific defenses "cannot be litigated on a class-wide basis." *Id.* at 21:25-26. If Fannie or Freddie did not own an "Enterprise Lien" "at the time of the HOA Foreclosure Sale," then purported "preemption" is immaterial. FAC, 4:20. Non-ownership of "Enterprise Liens" is a transaction-specific defense that defeats Plaintiffs' assertion that alleged "preemption" will end this case without any factual assessments. Lastly, Plaintiffs' suggestion that Defendants' violation of 4617(j)(3) proves "commonality" ignores the Supreme Court's determination that commonality "does not mean merely that they [Plaintiffs] have all suffered a violation of the same provision of law." *Dukes*, 131 S.Ct. at 2551. In sum, Plaintiffs did not prove 23(a)(2) commonality.[3]

### E.   Plaintiffs did not Prove 23(a)(3) Typicality

"Typicality" is the third requirement from 23(a) that Plaintiffs must prove. It evaluates whether a given defendant can be "sued as [a] representative part[y] on behalf of all [defendant class] members . . . ." Under 23(a)(3), a defendant can be sued as a "representative part[y]" only

---

[3] Plaintiffs' "commonality" cases are unavailing. *Roshandel* relied on the Ninth Circuit's *Wal-Mart v. Dukes* case that the Supreme Court reversed. *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1204 (W.D. Wash. 2008) (citing the pre-*en banc Dukes* decision). *Mazza* is inapposite because the defendants did not deny the existence of commonality concerning Honda's duty to disclose alleged shortcomings of a collision mitigation braking system. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Contrastingly, SFR disputes the issue of commonality in this case. *Canadian* is unpersuasive because it directly contradicts *Dukes*—the case where the Supreme Court defined "commonality." Specifically, *Canadian* identified the following three common questions: (i) whether plaintiffs (descendants of a Native American village) indeed owned disputed land, (ii) whether seven transactions (where New York purchased land from Native Americans) were unlawful, and (iii) if these transactions were unlawful, then what remedies were available for the plaintiffs. *Canadian St. Regis Band of Mohawk Indians v. New York*, 97 F.R.D. 453, 456 (N.D. N.Y. 1983). All three of these questions resemble inquiries that *Dukes* identified as *not* proving commonality: (i) "Do all of us plaintiffs indeed work for Wal-Mart?" (ii) "Is that an unlawful employment practice?" and (iii) "What remedies should we get?" *Dukes*, 131 S.Ct. at 2551.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES

1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014

(702) 485-3300 FAX (702) 485-3301

if the "defenses of the representative part[y] are typical of the" class' defenses. The Supreme Court has exhorted that "typicality" necessitates "careful attention to the requirements of" 23(a)(3). *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982); *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977). Typicality does not exist when a proposed class representative has a unique defense, which threatens to become the focus of a case. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Also, if a proposed class representative is not being sued by a plaintiff—and thus does not need to assert defenses against that plaintiff—then typicality is not established. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 (9th Cir. 1973).[4]

Here, the transaction-specific defense of ownership concerning "Enterprise Liens" is a unique defense, which threatens to become the focus of this lawsuit. The defense is unique because it is connected with a specific mortgage, association sale, Enterprise, and purchaser. For example, the FAC identified five houses owned by SFR; allegedly, a unique "Enterprise Lien" was on each of those five houses, raising transaction-specific defenses for all five of the purported "Enterprise Liens." FAC, 8:27-28 – 13:1-14. According to Mr. Meyer's testimony—the Freddie employee who has submitted declarations in 4617(j)(3) lawsuits—at least four unique documents should pertain to the issue of ownership of a unique "Enterprise Lien." Ex. A, 15:11-13, 42:12-16, 43:10-14, 44:1-5, 48:23-24, 50:16-24, 63:3-5, 79:21-25. Again, those documents are: Master Commitment, Master Agreement, Pooling Agreement, and Records of wire transactions between an Enterprise and a bank for the acquisition of a unique mortgage. *Id.* And, if a Pooling Agreement exists for a mortgage—which supposedly indicates the mortgage was securitized—then the corresponding "Enterprise Lien" is owned by a trust, not by Freddie or Fannie. Dkt. No. 46, 25:2-22; Dkt. No. 48, 5:7-17. Either way, SFR's unique transaction-specific defense regarding ownership of an "Enterprise Lien" will threaten to become this case's focus. Likewise, Plaintiffs did not allege that Freddie owned the "Enterprise Liens" that were supposedly on NNB's or LVDG's respective houses mentioned in the FAC. FAC, 13:16-17, 14:16. Thus, typicality is not

---

[4] These two typicality principles come from cases involving plaintiff class actions. As a result, SFR calibrated those cases' principles to the defendant-class-context.

established. *La Mar*, 489 F.2d at 465. Plaintiffs anticipated this shortcoming and proposed creating two separate classes, a so-called Freddie class and Fannie class. Mot., 10:19-28. Such a proposal, however, does not address the unique transaction-specific defense of "Enterprise Lien" ownership. Plaintiffs' assertion that the issue of so-called "preemption" "does not depend on any circumstances unique to Defendants or the transactions involved here" is inexplicable in light of Defendants' transaction-specific defense about ownership. *Id.* at 11:14-15. Such an erroneous assertion reveals that Plaintiffs did not give "careful attention to the requirements of" 23(a)(3). *Falcon*, 457 U.S. at 157; *Rodriguez*, 431 U.S. at 405. In the end, Plaintiffs did not prove 23(a)(3) typicality.

## F.    Plaintiffs did not Prove 23(a)(4) Adequacy of Representation

"Adequacy of representation" is the fourth requirement from 23(a) that Plaintiffs must prove. Pursuant to 23(a)(4), a representative class party must "fairly and adequately protect the interests of the class." This requirement precludes conflicts of interest between a class and its representatives. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). But, in order to identify a conflict of *interest*, the "interests of the class" must be identified. FRCP 23(a)(4). Here, alleged class interests are supposedly connected with and indirectly identified by "Enterprise Liens" that were purportedly on a house "at the time of the HOA foreclosure sale." Mot., 15:6. Plaintiffs' refusal to provide any evidence about "Enterprise Lien" ownership—or a list of the "current owners" of houses allegedly included in the proposed class—prevents SFR from conducting a conflict review between its property interests and "the interests of the class." The unique nature of the property interests involved in this case further emphasizes the significance of SFR having enough information to determine if conflicts will prevent it from being able to "fairly and adequately protect the interests of the class." FRCP 23(a)(4). Additionally, Plaintiffs' refusal to offer proof of "Enterprise Lien" ownership prevents this Court from being able to rigorously analyze 23(a)(4). Consequently, Plaintiffs did not prove 23(a)(4) adequacy of representation.

## G.    The Class is not Ascertainable

In addition to proving all four requirements in 23(a)(4), Plaintiffs must also prove that the proposed class' definition is ascertainable. *Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803,

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

804 (9th Cir. 2014); *Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). A class definition is not ascertainable if it: (i) implicates the merits of a case, *Kristensen*, 12 F. Supp. 3d at 1303, (ii) requires individualized inquiries, *Karhu v. Vital Pharm., Inc.*, No. 14-11648, 2015 WL 3560722, at *1 (11th Cir. June 9, 2015), or (iii) is based on information that has not been disclosed to all parties. *Karhu*, 2015 WL 3560722, at *3.

Here, Plaintiffs defined the proposed class as consisting of current owners of houses "to which: (1) HOA Foreclosure Sales have been or will be completed on or after September 18, 2009, (2) an **Enterprise Lien** had attached and had not been satisfied at the time of the applicable HOA Foreclosure Sale, and (3) the Court may assume and exercise in rem jurisdiction." FAC, 5:6-9 (emphasis added). According to Plaintiffs, the merits of this case involve so-called "preemption"— whether 4617(j)(3) preempted Nevada law, thereby preventing an association sale from extinguishing an "Enterprise Lien." The aforementioned statute, 4617(j)(3), is limited to "property of the Agency." So, this case's merits—at least in Plaintiffs' estimation—hinge on the extent to which Plaintiffs owned an "Enterprise Lien" (i.e. alleged "property of the Agency") "at the time of the HOA foreclosure sale." As a result, the class definition's reliance on the phrase "Enterprise Lien" means that the class definition impermissibly implicates the merits of this case. Similarly, "Enterprise Lien" ownership is a transaction-specific defense, which requires individualized inquiries, offering yet another reason why the class definition is not ascertainable. Lastly, the class definition's incorporation of and reliance on the phrase "Enterprise Lien" establishes that the definition is improperly based on information that Plaintiffs have not disclosed to Defendants. Such information concerns "Enterprise Lien" ownership. The refusal to share this information not only defeats ascertainability, but it also deprives SFR of due process, a deprivation that will be exacerbated if this Court certifies the proposed defendant class. *Bowman*, 419 U.S. at 288 n.4. Ultimately, the class is not ascertainable.

## H.    The Proposed Class is Incompatible with FRCP 23(b)(2)

Plaintiffs believe the class is maintainable under 23(b)(2). As such, Plaintiffs had to prove that "Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

relief is appropriate respecting the class as a whole . . . ." Here, Plaintiffs are "the party opposing the class." *Tilley v. TJX Co., Inc.*, 345 F.3d 34, 39 n.4 (1st Cir. 2003). Thus, Plaintiffs had to focus on whether they have "acted or refused to act on grounds that apply generally to the class . . . ." FRCP 23(b)(2). Plaintiffs did the opposite, focusing on the class' conduct, "[e]ach member of the Proposed Class has taken title to real property following an HOA Foreclosure Sale . . . ." Mot., 17:13-14. Defendants' conduct, however, is irrelevant for purposes of 23(b)(2). *Tilley*, 345 F.3d at 39; *Henson v. E. Lincoln Twp.*, 814 F.2d 410, 414 (7th Cir. 1987). Also, Plaintiffs had to "actually *prove*," *Halliburton*, 134 S.Ct. 2398, that injunctive or declaratory relief "is appropriate respecting the class as a whole . . . ." FRCP 23(b)(2). Suffice it to say, Plaintiffs did not prove the propriety of declaratory or injunctive relief for the "whole" class. Essentially, Plaintiffs' focus on Defendants—rather than on themselves (i.e. "the party opposing the class")—means that their 23(b)(2) arguments fail. *Dukes*, 131 S.Ct. at 2557.

Significantly, the Supreme Court has construed 23(b)(2) narrowly, primarily confining 23(b)(2) to its original meaning. *Id.*; *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Creative or "adventuresome" class actions have no place in 23(b)(2); they belong in 23(b)(3). *Amchem*, 521 U.S. at 614-15. The Supreme Court has noted that 23(b)(2) was designed for civil rights lawsuits, where "the party opposing the class" had discriminated against the class. *Dukes*, 131 S.Ct. at 2557; *Amchem*, 521 U.S. at 614. In such circumstances, "injunctive relief or corresponding declaratory relief" would prevent "the party opposing the class" from continuing to discriminate against the class. This relief, in other words, was indivisible; one declaration or injunction would give the entire class relief. *Dukes*, 131 S.Ct. at 2557-58. In ascertaining 23(b)(2)'s original meaning, the Supreme Court consulted 23(b)(2)'s drafting history, declining to expand 23(b)(2) beyond examples identified in that history. *Id.* at 2558. The Supreme Court has instructed lower courts to adhere to 23(b)(2)'s historical and original meaning. *Id.*

Several federal courts of appeals have heeded the Supreme Court's instruction and have perpetuated 23(b)(2)'s text by determining that defendant class actions—outside of the "reverse declaratory suit" context—are incompatible with 23(b)(2). *Tilley*, 345 F.3d at 39-40; *Henson*, 814 F.2d at 414. These courts have done so because of: (i) 23(b)(2)'s text, (ii) the drafting history of

23(b)(2), and (iii) institutional limitations imposed on the judiciary. *Id.* For example, the Seventh Circuit's Judge Posner explained why 23(b)(2)'s text was inconsistent with defendant class actions, "[a]lways it is the alleged wrongdoer, the defendant—never the plaintiff (except perhaps in the reverse declaratory suit)—who will have 'acted or refused to act on grounds generally applicable to the class.'" *Henson*, 814 F.2d at 414. The First Circuit's Judge Selya noted "it will be the defendants—the members of the putative class—who allegedly have acted in the same tortious or unlawful way (here, by selling infringing articles). The language of Rule 23(b)(2) leaves no room for such a circumstance to ground certification of a defendant class." *Tilley*, 345 F.3d at 39-40. Judge Posner was even blunter, describing 23(b)(2) defendant class actions as "a monstrous perversion of the principles of civil procedure . . . ." *Henson*, 814 F.2d at 416. Basically, 23(b)(2)'s text conflicts with defendant class actions.

As for 23(b)(2)'s drafting history, "the Advisory Committee's Notes make no reference to defendant class actions in connection with (b)(2). They describe the (b)(2) class action as an action by a plaintiff class against a defendant who has done something injurious to the class as a whole." *Id.* at 414. The omission of a single reference or example to defendant class actions in (b)(2)'s drafting history was further proof that such classes were inconsistent with 23(b)(2). *Id.*; *Tilley*, 345 F.3d at 40. This conclusion coincides with the Supreme Court's reliance on 23(b)(2)'s drafting history in interpreting and applying that rule; in reversing the Ninth Circuit's determination that 23(b)(2) could simultaneously accommodate class and individualized relief, the Supreme Court stressed, "[i]n none of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction." *Dukes*, 131 S.Ct. at 2558. Finally, the judiciary's institutional role as legal interpreter convinced Judge Posner to "interpret the existing rule," observing that "the ease and speed with which the Federal Rules of Civil Procedure can be amended by those whom Congress entrusted with the responsibility for doing so should make federal judges hesitate to create new forms of judicial proceeding in the teeth of the existing rules." *Henson*, 814 F.2d at 414.

Undoubtedly, Plaintiffs will tell this Court that it must ignore Judge Posner, Judge Selya, 23(b)(2)'s text, and 23(b)(2)'s drafting history because of *Blake v. Arnett*, 663 F.2d 906 (9th Cir.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1981)—a Ninth Circuit case that is distinguishable from the instant matter. Initially, *Blake* was a "reverse declaratory suit"; both the plaintiffs and defendants sued each other, requesting declaratory relief. *Id.* at 911-12; *Henson*, 814 F.2d at 414. Here, only Plaintiffs have sued Defendants for declaratory relief, meaning this case is not a "reverse declaratory suit." Indeed, the Ninth Circuit has yet to definitively resolve 23(b)(2)'s capacity to authorize a defendant class action outside of the "reverse declaratory suit" context. Moreover, *Blake* was issued several decades before *Dukes*, the Supreme Court's recent decision that defined "commonality" for plaintiff class actions. *Dukes* casts doubt on *Blake*'s commonality determinations, which were primarily based on the following question: "do (1) the Yuroks or (2) the Hoopas have the claimed rights in Simpson's lands because they are Yuroks or because they are Hoopas?" *Blake*, 663 F.2d at 912. This question resembles the following inquiries, which *Dukes* determined did not establish commonality, "Do all of us plaintiffs indeed work for Wal-Mart? . . . Is that an unlawful employment practice? What remedies should we get?" *Dukes*, 131 S.Ct. at 2551. Regardless, 23(b)(2)'s text and drafting history, combined with the Supreme Court's analytical approach to 23(b)(2), confirm that Plaintiffs' proposed *defendant* class is incompatible with 23(b)(2).

**I.     FRCP 23(b)(1)(B) cannot Accommodate the Expansive Proposed Class**

Perhaps concerned about maintaining a defendant class under 23(b)(2), Plaintiffs also assert their proposed class comports with 23(b)(1)(B). Pursuant to 23(b)(1)(B), a class action can be maintained if 23(a) is satisfied and if "prosecuting separate actions . . . against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . ." As with 23(b)(2), the Supreme Court has construed 23(b)(1)(B) narrowly, confining it to its original meaning. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999). Initially, 23(b)(1)(B) was designed for "limited fund" class actions, where one fund—containing a limited amount of funds—would be available for several people who were seeking redress. *Id.* at 834. Because the fund was "limited," there was the possibility that adjudications "as a practical matter, would be dispositive of the interests of other members not parties . . . or would substantially impair

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

or impede their ability to protect their interests" in securing redress from the limited fund. *Id.* In adhering to 23(b)(1)(B)'s narrow original meaning, the Supreme Court has observed that expansive readings of 23(b)(1)(B) raise due process concerns and the possibility of running afoul of the Rules Enabling Act. *Id.* at 845-46.

The Ninth Circuit has been mindful of 23(b)(1)(B)'s original meaning, and has developed several principles to perpetuate that understanding. First, "if the individual action inescapably will alter the substance of the rights of others having similar claims, as would an action attacking the reorganization of a fraternal benefit society, the situation falls within Rule 23(b)(1)(B)." *La Mar*, 489 F.2d at 467. Second, *stare decisis* does not trigger 23(b)(1)(B). *Id.* So, in order for Plaintiffs to use 23(b)(1)(B), the issue of so-called "preemption" must "inescapably . . . alter the substance of the rights of" proposed class members. *Id.* Here, "preemption" will do no such thing because of the: (i) transaction-specific defense of "Enterprise Lien" ownership, (ii) unique nature of property interests, (iii) "uniqueness of the properties involved here," FAC, 22:4-5, (iv) specific documentary proof of supposed "Enterprise Lien" ownership discussed in Mr. Meyer's deposition, and (v) individualized components of Plaintiffs' claim for quiet title. Likewise, *stare decisis* does not mean that a determination regarding 4617(j)(3)'s so-called "preemptive" impact on an individual "Enterprise Lien," connected with an individual house, will invariably have the identical impact for all alleged "Enterprise Liens." *La Mar*, 489 F.2d at 467.

Briefly, Plaintiffs discuss approximately four Native American land ownership cases, *Wyandotte Nation v. Kansas City, Kansas*, 214 F.R.D. 656 (D. Kan. 2003); *Canadian St. Regis Band of Mohawk Indians v. New York*, 97 F.R.D. 453 (N.D. N.Y. 1983); *Cayuga Indian Nation v. Carey*, 89 F.R.D. 627 (N.D. N.Y. 1981); *Oneida Indian Nation of Wis. v. New York*, 85 F.R.D. 701 (N.D. N.Y. 1980), three of which were written by one judge (*Canadian*, *Cayuga*, and *Oneida*). All four of these cases are inapposite because: (i) the subsequent purchasers who were being sued by the Native American plaintiffs—irrespective of whether they numbered in the thousands—all traced their interests in land back to one or a handful of transactions, *Wyandotte*, 214 F.R.D. at 492 (1855 treaty); *Canadian*, 97 F.R.D. at 463 (seven transactions); *Cayuga*, 89 F.R.D. at 633 (two transactions); *Oneida*, 85 F.R.D. at 709 (two transactions); *see also Canadian St. Regis Band of*

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1   *Mohawk Indians v. New York*, Nos. 5:82–cv–0783–LEK–TWD, 5:82–cv–1114–LEK–TWD,

2   5:89–CV–0829–LEK–TWD, 2013 WL 3992830, at *4 (N.D. N.Y. July 23, 2013) (discussing

3   number of transactions for *Cayuga* and *Oneida*),  (ii) the defendant classes typically included

4   government officials, *id.*, and (iii) a 2005 Supreme Court decision calls all of these decisions'

5   substantive law analyses into question. *City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*, 544

6   U.S. 197 (2005); *see also Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 268 (2d Cir.

7   2005) (discussing impact of *Sherrill*). Here, it is unlikely that the members of the proposed

8   defendant class trace all of their state-recognized interests in their individual houses back to one

9   or a handful of transactions. Rather, and as the FAC alleged for SFR, proposed class members

10  acquired state-recognized interests via numerous sales. FAC, 8:27-28 – 13:1-14. Also, Plaintiffs

11  have not sued any government officials in this case. And, the 2005 Supreme Court decision

12  indicates that the Native American plaintiffs' claims are barred by laches. Ultimately, 23(b)(1)(B)

13  cannot accommodate Plaintiffs' expansive proposed class.

14          **J.**     **Certification Under FRCP 23(c)(4) is Inappropriate**

15          Plaintiffs ask this Court to certify a single-issue class pursuant to 23(c)(4), which provides

16  "when appropriate, an action may be brought or maintained as a class action with respect to

17  particular issues." The "particular issue" Plaintiffs want to be certified is "whether Section

18  4617(j)(3) preempts" Nevada law. There are two reasons why certifying this "particular issue" is

19  not appropriate. First, "a 23(c)(4) issues class must still meet the requirements of Rule 23(a) and

20  (b) (except for the predominance requirement of Rule 23(b)(3)." *Tasion Communications, Inc. v.*

21  *Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015). As detailed above, Plaintiffs did

22  not prove any of 23(a)'s requirements or establish that their proposed class could be maintained

23  under 23(b)(1)-(2); Plaintiffs did not address 23(b)(3) predominance. Hence, certifying a 23(c)(4)

24  issue is not "appropriate" because Plaintiffs did not prove 23's requirements. Second, Plaintiffs'

25  proposed issue—just like their FAC—tries to transform due process deprivations into

26  "preemption." SFR's Motion to Dismiss explained why such an attempt is not "appropriate." Dkt.

27  No. 46. All told, certification under 23(c)(4) is inappropriate.

28  / / /

**IV.    CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Certification.

RESPECTFULLY SUBMITTED this __9th__ day of November, 2015.

**HOWARD KIM & ASSOCIATES**


*/s/Jesse N. Panoff*_____
HOWARD C. KIM, ESQ. (SBN 10386)
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
DIANA CLINE EBRON, ESQ. (SBN 10580)
JESSE N. PANOFF, ESQ. (SBN 10951)
1055 Whitney Ranch Dr., Suite 110
Henderson, Nevada, 89014
*Attorneys for SFR Investments Pool I, LLC*

**HOWARD KIM & ASSOCIATES**
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

- 21 -

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I hereby certify that on the 9th day of November 2015, a true and correct copy of **SFR Investments Pool 1, LLC's Response to Plaintiffs' Motion for Certification [Dkt. No. 23]** was transmitted electronically through the court's e-filing electronic notice system to the attorney(s) associated with this case. If electronic notice is not indicated through the court's e-filing system, then a true and correct paper copy of the foregoing document was served via U.S. Mail.

Asim Varma, Esq. Asim_Varma@aporter.com

Dana Jonathon Nitz, Esq. dnitz@wrightlegal.net, ebaker@wrightlegal.net, jalexy@wrightlegal.net, mresnick@wrightlegal.net

Howard Cayne, Esq. Howard.Cayne@aporter.com

John D. Tennert, Esq. jtennert@fclaw.com, pcarmon@fclaw.com

Jory C. Garabedian, Esq. jgarabedian@aldridgepite.com, npetty@aldridgepite.com

Leslie Bryan Hart, Esq. lhart@fclaw.com, pcarmon@fclaw.com

Michael A.F. Johnson, Esq. michael.johnson@aporter.com

Roger P. Croteau, Esq. croteaulaw@croteaulaw.com

DATED this 9th day of November, 2015

*Jacqueline A. Gilbert*_____
An Employee of Howard Kim & Associates

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301