HOWARD C. KIM, ESQ. (SBN 10386)
E-mail: howard@KGElegal.com
DIANA CLINE EBRON, ESQ. (SBN 10580)
E-mail: diana@KGElegal.com
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
E-mail: jackie@KGElegal.com
JESSE N. PANOFF, ESQ. (SBN 10951)
E-mail: jesse@KGElegal.com
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 485-3300
Facsimile:  (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, in its capacity as Conservator of Federal National Mortgage Association and Federal Home Loan Mortgage Corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION; and FEDERAL HOME LOAN MORTGAGE CORPORATION, | Case No.: 2:15-cv-01338-GMN-CWH **SFR INVESTMENTS POOL 1, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS [DKT. NO. 46]** |
| Plaintiffs, | |
| vs. | |
| SFR INVESTMENTS POOL 1, LLC, a Nevada Domestic Limited Liability Company; NEVADA NEW BUILDS, LLC, a Nevada Domestic Limited Liability Company; and LAS VEGAS DEVELOPMENT GROUP, LLC, a Nevada Domestic Limited Liability Company, | |
| Defendants. | |

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.    INTRODUCTION

This Court—and ultimately the Ninth Circuit—has the power to stop Plaintiffs from transforming due process deprivations into preemption. That, more than anything else, is what this case is truly about, presenting not for the first time nor surely the last a struggle between one of this country's most enduring values and the bullying force of government largesse, so driven to accomplish its ends that it cannot see the illegality of its means.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1    When the Supreme Court confronted this struggle within the Taking Clause context, when

2   it had to determine whether it would allow a government actor to transform a taking into

3   preemption, it responded with a decisive "*no.*" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012

4   (1984). This Court should do the same with due process, for if it does not, then SFR will have

5   received less due process than terrorists, drug dealers, sex offenders, and foreign-owned

6   corporations that threaten America's national security. Dkt. No. 46, 6:27-28 – 9:1-20. *See* infra

7   Part II.B. Due process—enshrined in our Constitution and protected by our courts—will not endure

8   if Plaintiffs are allowed to transform due process deprivations into preemption. If anything, the

9   remarkably bold, though profoundly incorrect, arguments that Plaintiffs have made in this case are

10   reason enough for this Court to prevent Plaintiffs from transforming due process deprivations into

11   preemption. Such arguments reflect the extraordinary measures that Plaintiffs will take to ensure

12   that government might defeats individual right.

13    Specifically, Plaintiffs attack the Supreme Court's analytical approach to due process, erase

14   six words from 12 U.S.C. § 4617(j)(3), mishandle the particular due process context that governs

15   the Corrected First Amended Complaint ("FAC") (what this Reply calls the Decision Due Process

16   Context), mischaracterize 4617(j)(3) as a self-executing absolute prohibition that purportedly

17   triggers the legislative acts doctrine, and offer versions of preemption that have less to do with

18   4617(j)(3)'s text than with a desire to gut Nevada law. Along the way, Plaintiffs ignore cases that

19   SFR analyzed, and bypass entire arguments that SFR made, hoping this Court will do the same.

20    Underlying all of Plaintiffs' misguided positions is a version of 4617(j)(3) that Congress

21   neither drafted nor enacted; it is an atextual tie that binds Plaintiffs' extraordinary efforts to

22   transform due process deprivations into preemption. Dkt. No. 69, 14:21-22, 16:6-7, 33:18-19.

23   Plaintiffs erase the phrase "without the consent of the Agency" from 4617(j)(3), leaving behind a

24   rewritten law for this Court to construe:

25

26        No property of the Agency shall be subject to levy, attachment,
      garnishment, foreclosure, or sale ~~without the consent of the Agency,~~
27      nor shall any involuntary lien attach to the property of the Agency.

28

After erasing six words from 4617(j)(3) ("without the consent of the Agency"), Plaintiffs point to the word "shall" as supposedly proving that 4617(j)(3) is an absolute prohibition compelling preemption. This amounts to pseudo preemption-by-subtraction, where Plaintiffs subtract six words from 4617(j)(3), resulting in a text that is not the product of the legislative process but the result of a contrived arithmetic of convenience: "No property of the Agency shall be subject to . . . foreclosure . . . ." This is hardly the stuff of statutory construction where the plain meaning rule reveals Congress's intent as expressed through a law's text. A statute's words—the language that *Congress* drafted and enacted—is "'the best evidence of'" preemption. *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. ___, 131 S.Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). In this case, Plaintiffs use their six-words-less version of 4617(j)(3) to propagate an absolute-prohibition-fiction.

Indeed, Plaintiffs believe that their six-words-less version of 4617(j)(3) absolutely prohibits extinguishment, forcing this Court to transform due process deprivations into preemption. Assuming *arguendo* that Congress had adopted Plaintiffs' truncated version of 4617(j)(3)—which Congress most assuredly did not do—due process would not and could not be so readily cast aside. SFR's Motion to Dismiss addressed this very issue, identifying three cases from the Decision Due Process Context that interpreted and applied statutes that contained absolute prohibitions. Dkt. No. 46, 9:4-12. By way of review, the Decision Due Process Context "consists of cases that concern: (i) state-recognized property interests, (ii) a federal law that authorizes a government actor to make decisions that nullify those interests, and (iii) a government actor's decision nullifies those interests without due process." *Id.* at 7:5-8. And, the three cases that SFR identified were *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 47 n.1 (1993); *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258 (1987); and *Pillsbury Co. v. FTC*, 354 F.2d 952, 953 (5th Cir. 1966). Under Plaintiffs' view of "preemption," the statutes in *James Daniel Good*, *Brock*, and *Pillsbury* "would have prevented the litigants [in those cases] from obtaining state-recognized interests" in the first place. Dkt. No. 46, 9:9-10.

Consider 21 U.S.C. § 881(a)(7), the statute in *James Daniel Good*,

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

> The following shall be subject to forfeiture to the United States **and no property right shall exist in them**: . . . (7) All real property . . . which is used . . . to commit . . . a violation of this subchapter punishable by more than one year's imprisonment.

The phrase "**no property right shall exist**" is an absolute prohibition, and somewhat resembles Plaintiffs' six-words-less version of 4617(j)(3). In *James Daniel Good*, Mr. Good had used a house the he owned (but was renting) and a surrounding 4-acre parcel to commit a federal drug crime, "a violation of this subchapter." If Plaintiffs have their way, then Mr. Good would have never obtained state-recognized property interests in his house or his land because of 881(a)(7)'s absolute prohibition that "no property right shall exist" in them due to Mr. Good's "violation of this subchapter." And yet, this country's highest court—despite the statute's absolute prohibition that "no property right shall exist"—determined the exact opposite: Mr. Good not only had state-recognized property interests that were "of historic and continuing importance," but also those interests could not be deprived without due process of law. *James Daniel Good*, 510 U.S. at 53-54. The same was true for the truck company in *Brock* and the company in *Pillsbury*, despite the existence of federal laws that contained absolute prohibitions. *Brock*, 481 U.S. at 257, 268; *Pillsbury*, 354 F.2d at 963. In *James Daniel Good*, *Brock*, and *Pillsbury* due process *deprivations* occurred. Plaintiffs want to change all of this, encouraging this Court to transform due process deprivations into preemption.

The Fifth Amendment—and all that its cherished words and essential values represent—is too strong a safeguard to be weakened by Plaintiffs' transformative designs. What was true in 1791 is no less true than for today, "No person shall . . . be deprived of . . . property, without due process of law[.]" U.S. CONST. amend. V. This Court should dismiss the FAC with prejudice because Plaintiffs' claims are facially implausible. FHFA's decision not to consent deprived—and not "preempted"—SFR of state-recognized property interests without due process. The Fifth Amendment is the "supreme Law of the Land" that this Court is "bound . . . to support" and that FHFA must follow no matter how many words it erases from 4617(j)(3), or how many state-recognized interests it wants to eliminate. U.S. CONST. art. VI, cl. 2-3.

- 4 -

KIM GILBERT EBRON

7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

## II.   LEGAL ARGUMENT

### A.   Plaintiffs Attack the Supreme Court's Analytical Approach to Due Process

SFR's Motion to Dismiss ("Motion") explained how the Supreme Court's analytical approach to due process—the principles used to determine whether a "property" interest exists and whether a "deprivation" has occurred—prevents Plaintiffs from obtaining relief, meriting dismissal. Dkt. No. 46, 5:5-28 – 6:1-26. The approach consists of three principles; the **second principle** provides that property interests "[a]ttain constitutional status by virtue of the fact that they have been initially recognized and protected by state law . . . ." *Paul v. Davis*, 424 U.S. 693, 710 (1976). State law's recognition of an individual's interest establishes the existence of constitutionally protected "property." *Id.* And, if state law recognizes an interest, then "[i]n the usual case, the fact that the property interest is recognized under state law is enough to trigger the protections of the Due Process Clause." *Ralls Corp. v. CFIUS*, 758 F.3d 296, 316 (D.C. Cir. 2014).[1]

### 1.   4617(j)(3) does not "Create & Define" SFR's Interests

In response, Plaintiffs attacked the Supreme Court's second principle by insisting that *federal law* (i.e. 4617(j)(3)), and not state law, would create and define any interests—such as free and clear title—that SFR has in the five houses identified in the FAC. Dkt. No. 69, 31:20-28. Plaintiffs opine that "*only* if [FHFA] consented to the HOA sales' extinguishment of the Enterprises' interest[s] could [SFR] obtain an interest in the" houses. *Id.* at 31:15-17. According to Plaintiffs, federal law (4617(j)(3)) "'provide[s] the rules or understandings'" that create and define SFR's interests. *Id.* at 31:23. **This repudiates the second principle in the Supreme Court's analytical approach to due process**, an approach that is as binding as it is clear. Again, and even in cases involving the interaction between state and federal law—like this lawsuit— courts assess whether state law recognizes property interests. If the answer is "yes," then due process applies. Plaintiffs want to eliminate, or "preempt" this principle, which would make it

---

[1] The Motion observed that "courts apply the Supreme Court's analytical approach to cases where state and federal law interact." Dkt. No. 46, 5:27-28. Interaction typically occurs within the Decision Due Process Context, "between state-recognized property interests and a federal law that authorizes a government actor to make decisions that nullify those interests." *Id.* at 6:1-3.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

irrelevant—in cases where state and federal law interact—whether state law recognizes an interest.

Notably, Plaintiffs' attack of the Supreme Court's second principle would attribute a staggering amount of power to 4617(j)(3) that Congress did not intend. Nothing in 4617(j)(3)'s text suggests that Congress authorized FHFA to have the power to "create and define" SFR's interests. To the contrary, 4617(j)(3)'s text demonstrates that Congress intended 4617(j)(3) to authorize FHFA to make an individualized decision concerning consent. Dkt. No. 46, 10:11-28. Such authorization is evidenced by "4617(j)(3)'s coupling of the words 'consent' and 'Agency' in the phrase 'consent of the Agency.'" *Id.* at 10:14-15. By linking "the Agency" with the decision to "consent," 4617(j)(3) denotes that Congress authorized FHFA to make a decision concerning "consent." FHFA's decision is individualized because 4617(j)(3) focuses on "*the* consent" of FHFA. Congress's "use of the word 'the' demonstrates that FHFA's decision is individualized, to be made on a case-by-case, mortgage-by-mortgage, foreclosure-by-foreclosure basis." *Id.* at 10:18-19 (citing *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002)). Thus, the Supreme Court's approach to due process and 4617(j)(3)'s text establish that 4617(j)(3) does not create and define SFR's interests. To contend otherwise, as Plaintiffs do, is to eliminate the second principle from the Supreme Court's analytical approach to due process and to ignore Congress's intent.

### 2. *Plaintiffs' Cases are Unavailing*

Plaintiffs believe three cases justify eliminating the Supreme Court's second principle. Dkt. No. 69, 31:24-28 (citing *United States v. Fuller*, 409 U.S. 488 (1973); *Members of Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323 (Fed. Cir. 2005); *Hardison v. Cohen*, 375 F.3d 1262 (11th Cir. 2004)). Yet, these decisions have nothing to do with the interplay between state and federal law in general or with the Decision Due Process Context in particular; all three concentrated on whether a federal law created and recognized alleged property interests. They are, therefore, inapposite. *Hardison* involved a medical resident's right to employment in the Department of Veterans Affairs. The federal statute at issue was U.S.C. Title 38. Before construing 38, *Hardison* noted "we must, therefore, examine the federal laws under which Hardison was employed by a federal agency to determine whether those laws reasonably could support a property interest in his residency." *Hardison*, 375 F.3d at 1268. Likewise, *Fuller* concerned Secretary of

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

the Interior-issued permits to graze on federal lands pursuant to the Taylor Grazing Act. That Act stated that it "'shall not create any right, title, interest, or estate in or to the lands.'" *Fuller*, 409 U.S. at 489 (quoting 43 U.S.C. § 315b). Finally, *Peanut Quota* involved quotas created by federal law—the 1996 Federal Agriculture Improvement and Reform Act ("FAIR"). *Peanut Quota* explained that "the dimensions of any property interest the Members may have in peanut quota allotments are defined by the 1996 FAIR Act, which created the peanut quotas at issue." *Peanut Quota*, 421 F.3d at 1331. In sum, the existence of the alleged interests in *Hardison*, *Fuller*, and *Peanut Quota* all hinged on whether a federal law created and recognized those interests. **State law and state-recognized interests were not involved**. Therefore, Plaintiffs' reliance on these decisions to attack the Supreme Court's analytical approach to due process is inexplicable. These cases do not allow Plaintiffs to "preempt" Supreme Court precedent. The Supreme Court's analytical approach to due process controls; its second principle confirms that SFR's state-recognized property interests triggered due process. Thus, Plaintiffs' cases are unavailing.

### 3.    *Plaintiffs' Attack is Designed to Avoid 4617(j)(3)'s Lack of a Procedure*

Plaintiffs attacked the Supreme Court's analytical approach to due process because they needed a way to avoid 4617(j)(3)'s deficiency: 4617(j)(3) is bereft of a process for SFR to request FHFA's consent. Dkt. No. 46, 14:9. A similar infirmity plagued 12 U.S.C. § 1818(g) and the FDIC in *Feinberg v. FDIC*, 420 F. Supp. 109, 121 (D. D.C. 1976), a case that SFR analyzed but Plaintiffs ignored. *Id.* at 16:16-28 – 17:1-3. As SFR recounted, *Feinberg* struck down 1818(g) as unconstitutional because it "lacked procedures that protected suspended presidents or gave them constitutionally sufficient notice." *Id.* at 16:20-21 (citing *Feinberg*, 420 F. Supp. at 120-21). Fearing that result here, Plaintiffs devised an argument that would have the appearance of making it unnecessary for this Court to confront 4617(j)(3)'s lack of a process to request consent. That argument was: Attack the Supreme Court's second principle by initially claiming that SFR's state-recognized interests had been "preempted," rather than *deprived*, and then by asserting that 4617(j)(3) "creates and defines" SFR's interests. Dkt. No. 69, 31:20-28. But the Supreme Court's analytical approach to due process—its second principle that if state law recognizes an interest, then due process applies—is not so easily avoided. The procedural deficiencies of 4617(j)(3), no

1   less than those of 1818(g), cannot be avoided by transforming deprivations into preemption or by

2   claiming, without any textual support, that 4617(j)(3) "creates and defines" SFR's interests. At

3   bottom, Plaintiffs' attack is designed to avoid 4617(j)(3)'s lack of a procedure to request consent.

### B.    Due Process Deprivations cannot be Transformed into "Preemption"

5       SFR's Motion reviewed six cases from the Decision Due Process Context, and predicted

6   that Plaintiffs would erase language from 4617(j)(3) to create the illusion that it is an absolute

7   prohibition that supposedly compels preemption. Dkt. No. 46, 9:1-3. Plaintiffs did not disappoint,

8   erasing "without the consent of the Agency" from 4617(j)(3) on at least three occasions. Dkt. No.

9   69, 14:21-22, 16:6-7, 33:18-19. What SFR did not predict was that Plaintiffs would ignore five out

10   of the six cases that SFR reviewed. The only case that Plaintiffs assessed—albeit incorrectly—is

11   *Ralls*, 758 F.3d 296. According to Plaintiffs, *Ralls* held that the federal Defense Production Act of

12   1950 ("DPA") "operated . . . as a potential qualification on Ralls' vested property rights, rather

13   than a condition precedent to the vesting of such rights."[2] Dkt. No. 69, 32:14. This is wrong; *Ralls*

14   determined that the President's *decision*—like FHFA's *decision* here—deprived Ralls Corp.

15   ("Ralls") of state-recognized property interests without due process. **Deprivation** occurred, not a

16   "potential qualification."

17       In fact, Plaintiffs' description is not of the D.C. Circuit's holding in *Ralls*, but of the district

18   court's decision that *Ralls* reversed. The "district court concluded that Ralls's state law property

19   interests were *not* constitutionally protected because Ralls . . . acquired its property interests

20   'subject to the known risk of a Presidential veto' . . . ." *Ralls*, 758 F.3d at 316. This "known risk"

---

[2] Plaintiffs' juxtaposition of "qualification" with "condition precedent" is baffling. The plain meaning of "qualification" is "1. a quality, accomplishment, etc., that fits a person for some function, office, or the like. 2. a circumstance or condition required by law or custom for getting, having, or exercising a right, holding an office, or the like." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1578 (2d ed. 2001). BLACK'S defines "condition precedent" as "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." BLACK'S LAW DICTIONARY 312 (8th ed. 1999). These words—"qualification" and "condition precedent"—are more synonymous than they are opposites. They also call to mind the plain meaning of "contingent," which is "1. dependent for existence, occurrence, character, etc., on something not yet certain; conditional (often fol. by *on* or *upon*): *Our plans are contingent on the weather.* 2. liable to happen or not; uncertain; possible." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 440 (2d ed. 2001).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

is what Plaintiffs describe as a "potential qualification." And, the appellees in *Ralls*—as Plaintiffs do here—argued that this "potential qualification" meant that Ralls's interests were "too contingent to merit constitutional protection . . . ." *Id.* Plaintiffs try to distance themselves from this "too contingent" argument by erroneously claiming that in the instant lawsuit SFR's interests are disputed, while in *Ralls* the interests were undisputed. Dkt. No. 69, 32:8. This is fallacious. In *Ralls* it was undisputed that: (i) Ralls purchased property (i.e. four Oregon LLCs and their assets) and (ii) *under Oregon law* Ralls had property interests. *Ralls*, 758 F.3d at 315. Here, the identical averments are also undisputed: (i) SFR purchased property (i.e. five houses) and (ii) *under Nevada law* SFR has property interests. Dkt. No. 22, 2:10-11, 3:4-7, 15:11-12, 17:23-24, 19:21-22, 21:9-10, 22:1-3, 22:6-7, 22:14-15, 22:20-22. Recall that the FAC alleged "the Nevada Supreme Court has held that a foreclosure authorized and properly conducted under Nev. Rev. Stat. § 116.3116 can extinguish other interests in the underlying property, including deeds of trust." *Id.* at 3:4-6.

Furthermore, Plaintiffs suggest that FHFA's consent is a "condition precedent" to SFR's interests. Dkt. No. 69, 32:14-15. FHFA's consent—the so-called "condition precedent"—is an alleged contingency that Plaintiffs have taken from federal law (i.e. their flawed construction of 4617(j)(3)) and injected it into state law. Such a move is yet another attempt to eliminate the Supreme Court's second principle, which evaluates whether state law, separate and apart from federal law, imposes any contingencies on SFR's interests (i.e. whether state law recognizes SFR's interests). And that is exactly what *Ralls* determined, "[t]here is no contingency built into the *state* law from which Ralls's property interests derive and to which interests due process protections traditionally apply." *Ralls*, 758 F.3d at 316-17. So too with SFR's interests. There "is no contingency built into the *state* law from which [SFR's] property interests derive and to which interests due process protections traditionally apply." *Id.* Consequently, *Ralls* adhered to the Supreme Court's second principle, emphasizing that "Ralls's state-law property rights fully vested upon the completion of the transaction, meaning due process protections necessarily attached. There is nothing 'contingent' about the interests Ralls obtained under state law . . . ." *Id.* at 316. Here, SFR's state-recognized interests "fully vested upon completion of the transaction[s]" between SFR and Associations, "meaning due process protections necessarily attached. There is

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

nothing 'contingent' about the interests [SFR] obtained under state law . . . ." *Id.* Plaintiffs misread *Ralls*, a Decision Due Process case that Plaintiffs want to transform into a "preemption" opinion.

Finally, Plaintiffs claim that the Decision Due Process cases are inapposite because in those cases, the litigants obtained interests "before state action changed the legal regime that purported to take away" those interests. Dkt. No. 69, 32:27 n.15. None of these cases did anything of the sort. In these cases, a government actor's *decision*, as opposed to a "legal regime" change, nullified state-recognized interests, just as occurred here. Dkt. No. 46, 7:10-28 – 9:1-20. And, in all six cases, a federal law authorized a government actor to make decisions that nullified state-recognized interests, also just as occurred here. *Id.* In the end, due process deprivations cannot be transformed into "preemption." To do so would be to forsake *Ralls* and the other cases from the Decision Due Process Context, thereby allowing Plaintiffs to "preempt" due process from a familiar context involving state and federal law.[3]

### C. 4617(j)(3) is not Self-executing

Plaintiffs try to transform due process deprivations into preemption by mischaracterizing 4617(j)(3) as self-executing in order to "create the illusion that 4617(j)(3) in and of itself—and not FHFA's decision—'preempted' Nevada law. In reality, FHFA's decision nullified, rather than 'preempted,' SFR's interests." Dkt. No. 46, 9:25-27. SFR made three textual arguments about why 4617(j)(3) is not self-executing and analyzed two Supreme Court decisions that define the features of self-executing laws. Plaintiffs ignored SFR's textual arguments and the two cases.

#### 1. *Plaintiffs' Illusion of Self-execution*

---

[3] Plaintiffs also note that the President decided to nullify Ralls's state-recognized interests via 50 App. U.S.C. § 2170(d)(1). Dkt. No. 69, 32:13. That provision provides, "the President **may take such action** . . . **as** the President considers **appropriate** to suspend or prohibit any covered transaction that threatens to impair the national security of the United States." This statute is similar to 12 U.S.C. § 4617(b)(2)(D)(ii), which is the law that FHFA connects with its decision regarding consent. According to 4617(b)(2)(D)(ii), "**the Agency may**, as conservator, **take such action as** may be . . . **appropriate** to . . . preserve and conserve the assets and property of the regulated entity." Both provisions state that government actors (i.e. the President and FHFA) "may take such action as may be appropriate." The notable difference is that in 2170(d)(1) the President decides what is "appropriate," while external considerations influence the meaning of "appropriate" in 4617(b)(2)(D)(ii); FHFA, unlike the President, does not have the power to dictate what is "appropriate" for purposes of 4617(b)(2)(D)(ii).

Instead, Plaintiffs cling to the illusion that 4617(j)(3) "automatically" "preempts" SFR's interests and accuse SFR of ignoring 4617(j)(3)'s "plain text." Dkt. No. 69, 33:18, 35:12. But this tactic fails because Plaintiffs erase "without the consent of the Agency" from 4617(j)(3). Plaintiffs erased these words because they prove that 4617(j)(3) is not self-executing. Using a faulty version of 4617(j)(3) that reads "No property of the Agency shall be subject to . . . foreclosure . . . ." creates the illusion that 4617(j)(3) is automatic, devoid of a government actor (FHFA) that is authorized to make individualized decisions. Erasing a law's text is not, however, statutory construction; it is statutory destruction. Plaintiffs' illusion of self-execution is textually indefensible.

### 2. *Bollow does not Help Plaintiffs*

Next, Plaintiffs claim that *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir. 1981) validates their illusory version of 4617(j)(3). Dkt. No. 69, 16:8-20. *Bollow* construed 12 U.S.C. § 341, Fifth, which stated "[a] Federal reserve bank shall have power . . . to dismiss at pleasure such officers and employees." In *Bollow*, an attorney for a federal reserve bank was terminated and argued that "that the dismissal 'at pleasure' language of this statute refers only to the power of reserve banks to terminate an officer or employee without consulting the Board, and that the process rights of reserve bank employees must be determined by reference to state law." *Bollow*, 650 F.2d at 1097. Pointing to California law, the attorney suggested that he was entitled to a pre-termination hearing. The Ninth Circuit disagreed, noting that 341, Fifth "strictly limit[s]" reserve banks' powers and discretion; such banks do not have authority or discretion to make decisions that are contrary to or make inroads in their power "to dismiss at pleasure." *Id.* (citing with approval *Armano v. Fed. Reserve Bank of Boston*, 468 F. Supp. 674 (D. Mass. 1979)). So, the bank could not have—even if it had wanted to—made a decision to use California's pre-termination hearing because such a procedure was contrary to the bank's power "to dismiss at pleasure"; the bank lacked the requisite authority and discretion to make that decision.

Here, Plaintiffs opine that *Bollow* determined that "the bank's discretion under the statute did not affect the federal law's preemptive effect . . . ." Dkt. No. 69, 16:16-17. Plaintiffs then compare this supposed "bank discretion" to FHFA's decision concerning consent as somehow demonstrating that 4617(j)(3) is self-executing. Yet, *Bollow* determined that **the bank lacked**

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**discretion**, not that its discretion was incapable of "affect[ing] [341, Fifth's] preemptive effect . . . ." *Bollow*, 650 F.2d at 1097-98. Thus, *Bollow* and 341, Fifth are distinguishable from this case. In 341, Fifth, Congress did not authorize reserve banks to make decisions—such as deciding to use pre-termination hearings—that pertain to "dismiss[ing]" employees. Congress expressly limited reserve banks' power to dismissing employees "at pleasure." A pre-termination hearing would have contravened this power because the bank would have had to—before it could dismiss an employee—conduct a hearing; the bank would no longer be able to simply terminate employees "at pleasure." Contrastingly, in 4617(j)(3) Congress did, in fact, authorize FHFA to make an individualized decision concerning consent. This is the type of authority that Congress refused to give reserve banks in 341, Fifth. And, it is FHFA's authority to make individualized decisions regarding consent that is one of the reasons why 4617(j)(3) is not self-executing.[4] Plaintiffs' illusion of self-execution fails. 4617(j)(3) is not self-executing, and *Bollow* does not help Plaintiffs.

### D.   The Legislative Acts Doctrine is Inapplicable

SFR demonstrated that the Supreme Court limited the legislative acts doctrine to "a legislatively mandated substantive change in the scope of [an] entire program." *Atkins v. Parker*, 472 U.S. 115, 129 (1985). Dkt. No. 46, 10:1-28. The doctrine does not pertain to "the procedural fairness of individual eligibility determinations." *Atkins*, 472 U.S. at 129; *Ortiz v. Eichler*, 794 F.2d 889, 894 (3d Cir. 1986). Here, the doctrine is inapplicable because FHFA's decision is individualized, as confirmed by 4617(j)(3)'s phrase "*the* consent." Dkt. No. 46, 10:17, 11:10. Plaintiffs seek to evade the Supreme Court's doctrinal limitation with two inapposite cases.

*Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1259-60, 1263 (9th Cir. 1994) involved a county's "legislatively mandated substantive change in the scope" of their flood program by adopting a 25-year flood plan. In *Samson*, a city adopted several ordinances that imposed a moratorium on

---

[4] To their credit, Plaintiffs do not argue that *Bollow* falls within the Decision Due Process Context. Such an argument would have been meritless. Though the attorney in *Bollow* asserted that he was deprived of property (an entitlement to employment) without due process, he did not contend that this interest was recognized by state law—one of the defining features of the Decision Due Process Context. Rather, the attorney alleged that the source of his interest was: (i) custom, practice, and policy, (ii) a bank president's written assurance that the attorney would not be fired if his work was satisfactory, and (iii) federal age-discrimination laws. *Bollow*, 650 F.2d at 1098-99.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  "shoreline substantial development [permit] applications." *Samson v. City of Bainbridge Island*,

2  683 F.3d 1051, 1053-54 (9th Cir. 2012). Such ordinances were a "legislatively mandated

3  substantive change in the scope of" the city's permit application program. In short, neither

4  *Halverson* nor *Samson* implicated "the procedural fairness" of individual determinations.

5  Contrastingly, and as SFR's Motion demonstrated, FHFA's decision concerning consent is an

6  "individual determination," the "procedural fairness" of which is dictated by due process.

7  *Halverson* and *Samson* are, therefore, inapposite.

8       Similarly, Plaintiffs' treatment of the recent Ninth Circuit case, *Bank of Manhattan, N.A.*

9  *v. FDIC*, 778 F.3d 1133 (9th Cir. 2015), is equally unavailing. Dkt. No. 69, 34:10. In that case,

10  FDIC invoked the legislative acts doctrine to show that its decision to transfer an asset without

11  obtaining "consent" did not deprive anyone of state-recognized interests (i.e. contract rights).

12  FDIC asserted that no deprivation occurred because the Financial Institutions Reform, Recovery,

13  and Enforcement Act ("FIRREA") was enacted before the contract; Congress's enactment of

14  FIRREA prevented the contracting parties from having interests. Dkt. No. 47-1, 26. The Ninth

15  Circuit rejected this "novel" position. *Bank of Manhattan*, 778 F.3d at 1136. According to

16  Plaintiffs, *Bank of Manhattan* did so because of Ninth Circuit precedent. Yet, and as SFR's Motion

17  explained, "[a]fter calling this argument 'novel,' the Ninth Circuit refused to adopt FDIC's

18  reasoning because it was irrelevant that FIRREA was enacted before the contract, and no conflict

19  between state and federal law existed." Dkt. No. 46, 12:14-16 (citing *Bank of Manhattan*, 778 F.3d

20  at 1136). Ninth Circuit precedent predominantly influenced the earlier portion of *Bank of*

21  *Manhattan*, not its rejection of FDIC's "novel" legislative acts doctrine position.[5] All told, the

22
23
24
25
26
27
28

---

[5] Plaintiffs opine that FHFA's decision not to consent "merely let the parties' existing property rights remain as they were already defined by law." Dkt. No. 69, 33:25-26. This incorrectly presupposes that 4617(j)(3) defines SFR's interests. As this Reply and SFR's Motion reveal, the Supreme Court's analytical approach to due process and the Decision Due Process Context defeat Plaintiffs' misguided "defined by law" contention. Again, Plaintiffs' "defined by law" argument fails because it attacks the second principle of the Supreme Court's analytical approach to due process and contravenes the six Decision Due Process Context cases that SFR discussed. Because *Nevada law* recognizes SFR's interests, SFR has "property" that triggers due process. Plaintiffs also assert that *Bank of Manhattan* is supposedly inapposite because the instant lawsuit does not "involve the preemption of individual, pre-conservatorship contracts." Dkt. No. 69, 34:13-14. This is erroneous. SFR explored how *Bank of Manhattan*'s determination that FIRREA did not preempt

legislative acts doctrine is inapplicable because FHFA's decision is an "individual determination."

### E.  "Reasoned Decisionmaking" Baffles Plaintiffs

SFR established that "the process that FHFA uses in deciding whether to consent is not 'logical and rational'" because, in part, "no such process exists; 4617(j)(3) lacks a procedure to request FHFA's consent or an opportunity to contest FHFA's decision." Dkt. No. 46, 17:19-21. Because FHFA's process—or lack thereof—is not "logical and rational," FHFA's decision violated "reasoned decisionmaking," which a recent Supreme Court case defined. *Id.* at 17:16-18 (citing *Michigan v. EPA*, 576 U.S. ___, 135 S.Ct. 2699, 2706 (2015)). Unfortunately, Plaintiffs ignored this case, taking a different approach to "reasoned decisionmaking." This approach offers internally inconsistent positions that dispel Plaintiffs' illusion that 4617(j)(3) in and of itself—as opposed to FHFA's *decision*—"preempted"—really *deprived*—SFR's interests.

On the one hand, Plaintiffs insist that 4617(j)(3) "*automatically* prevents" extinguishment without "any decision-making by FHFA." Dkt. No. 69, 35:12-13. This is little more than a return to Plaintiffs': (i) mischaracterization of 4617(j)(3) as an absolute prohibition and (ii) illusion that 4617(j)(3) is self-executing. As mentioned above, the absolute-prohibition-fiction and the illusion of self-execution are interpretive errors caused by Plaintiffs' six-words-less version of 4617(j)(3).

> **Absolute-prohibition-fiction =** the fallacy that 4617(j)(3) absolutely prohibits extinguishment
>
> **Illusion of self-execution =** the fallacy that 4617(j)(3) in and of itself—and not FHFA's decision—"preempted" Nevada law
>
> **Six-words-less version of 4617(j)(3) =** "No property of the Agency shall be subject to . . . foreclosure . . . ."

These errors, along with Plaintiffs' six-words-less version of 4617(j)(3), are designed to make it seem as though FHFA does not make a decision concerning consent.

On the other hand, Plaintiffs try to satisfy "reasoned decisionmaking" by defending FHFA's individualized "decision [as being] logical and within FHFA's statutory powers." Dkt.

---

state contract law, indicates that HERA fails to do the same vis-à-vis Associations' CC&Rs. Dkt. No. 46, 24:22-28.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

No. 69, 35:18. Plaintiffs seek to defend "such a decision" by quoting two cases. The first dealt with FHFA's "discretion to **decide** how best to manage" Enterprise assets. *In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 798 (E.D. Va. 2009) (emphasis added). The second involved FHFA's "business **decisions**[.]" *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 994 (9th Cir. 2013) (emphasis added). But, if 4617(j)(3) "*automatically* prevents" extinguishment without "any decision-making by FHFA," then why are Plaintiffs quoting cases about FHFA "decisions" or defending "such a decision [concerning consent as being] logical and within FHFA's statutory powers[?]" Dkt. No. 69, 35:18. For that matter, if 4617(j)(3) is an "absolute bar," then how can FHFA "elect to forego" it? *Id.* at 16:8-10. The answers to these questions are similar: (i) 4617(j)(3) does not "automatically prevent" extinguishment and (ii) 4617(j)(3) is not an "absolute bar." Plaintiffs' internally inconsistent statements—"automatic v. decision" and "absolute v. electing to forego"—are indefensible byproducts of a law that Congress never wrote. They are the absolute-prohibition-fiction and the illusion of self-execution, interpretive errors caused by Plaintiff' six-words-less version of 4617(j)(3).

Regardless, Plaintiffs' efforts to satisfy "reasoned decisionmaking" fail because they focus on FHFA's decision, as opposed to the *process*—or lack thereof—that FHFA used in deciding whether to consent. "Reasoned decisionmaking" initially focuses on *the process* that a government actor uses to make a decision, not the decision itself. Dkt. No. 46, 17:19-20 (citing *Michigan*, 135 S.Ct. at 2706). And that is what SFR did in its Motion. Because FHFA's *process*—or lack thereof—was not "logical and rational," the product of that *process*—or lack thereof—violated "reasoned decisionmaking." Plaintiffs cannot defend FHFA's *process* because, in part, "no such process exists; 4617(j)(3) lacks a procedure to request FHFA's consent or an opportunity to contest FHFA's decision." *Id.* at 17:19-21. Ultimately, "reasoned decisionmaking" baffles Plaintiffs.[6]

**F.**    **4617(j)(3)'s Text Defeats Plaintiffs' Express Preemption Arguments**

SFR made four textual arguments about why 4617(j)(3) does not expressly preempt

---

[6] According to Plaintiffs, this Court rejected SFR's "reasoned decisionmaking" argument in *Skylights*. Dkt. No. 69, 35:9. Respectfully, this Court has yet to address "reasoned decisionmaking" or *Michigan*, 135 S.Ct. 2699. Dkt. No. 46, 17:4-28 – 18:1. The same can be said about the cases that SFR identified as belonging to the Decision Due Process Context.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  Nevada law. *Id.* at 19:11-25 – 21:1-8. These arguments collectively and individually established

2  that the "plain wording" of 4617(j)(3) does not show that Congress had a "clear and manifest"

3  intent to preempt Nevada law. Plaintiffs mostly ignored SFR's contentions and opined that

4  4617(j)(3)'s text expressly "preempts" Nevada law. This position is unpersuasive because

5  Plaintiffs support it with their six-words-less version of 4617(j)(3) that erases "without the consent

6  of the Agency." Dkt. No. 69, 14:21. In doing so, Plaintiffs mar "the best evidence of Congress's

7  pre-emptive intent." *Whiting*, 131 S.Ct. at 1977 (quoting *Easterwood*, 507 U.S. at 664).

8        Furthermore, Plaintiffs rely on this Court's decision in *Skylights, LLC v. Byron*, ___ F.

9  Supp. 3d ___, No. 2:15–cv–00043–GMN–VCF, 2015 WL 3887061, at *6 (D. Nev. June 24, 2015)

10  for the proposition that because "4617(j) unambiguously protects FHFA property from . . . adverse

11  actions . . . which could otherwise be imposed on FHFA's property under state law" Congress's

12  "creation of these protections clearly manifests its intent to displace state law." *Id.* Respectfully,

13  this construction implicitly assumes that 4617(j)(3)—one of the paragraphs in subsection

14  4617(j)—is self-executing, automatically protecting FHFA's alleged property. The statement that

15  "4617(j) . . . protects FHFA property," depicts that law as if it functions on its own. Indeed,

16  *Skylights* supported its interpretation by citing two cases that construed self-executing laws, and

17  by referring to 4617(j) *in toto*, as opposed to merely 4617(j)(3). *Id.* (citing *Bd. of Commissioners*

18  *of Montgomery Cnty. v, FHFA*, 758 F.3d 706, 709 (6th Cir. 2014) (construing 12 U.S.C. §

19  4617(j)(2); *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, 775 F.3d 1113, 1117 (9th Cir. 2014)

20  (interpreting 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2)). But by referring to the entire 4617(j)

21  subsection, *Skylights* commingled two self-executing paragraphs—4617(j)(2) and 4617(j)(4)—

22  with a non-self-executing paragraph, 4617(j)(3). Such commingling diverges from 4617(j)'s

23  structure, which physically and conceptually separates 4617(j)(3) from 4617(j)(2) and 4617(j)(4).

24  Treating 4617(j) as one indistinct statutory component departs from Congress's intent that the way

25  in which 4617(j)(3) functions—unlike 4617(j)(2) and 4617(j)(4)—depends on FHFA's

26  individualized decision; the way in which 4617(j)(2) and 4617(j)(4) function does not depend on

27  a government actor's (FHFA) individualized decision.[7] Dkt. No. 46, 19:14-25 – 20:1—17.

28   

---

[7] As SFR explained, 4617(j)(2) and 4617(j)(4) "function on their own; they are self-executing. No

Structural, as with textual, fidelity is important to statutory construction.[8] This is especially so because 4617(j)(3)'s text, purpose, and function are different from 4617(j)(2), 4617(j)(4), and other self-executing statutes. Dkt. No. 46, 19:14-25 – 20:1—17.

Under 4617(j)(3), "[n]o property of the Agency shall be subject to . . . foreclosure, or sale without the consent of the Agency . . . ." These words reveal Congress's purpose in enacting 4617(j)(3) and describe how 4617(j)(3) functions. Dkt. No. 46, 19:17-18. Congress's **purpose** was not to create a self-executing "property protection," but it was "to authorize a government actor (FHFA) to make individualized decisions regarding consent." *Id.* at 19:18-19. This individualized decision is at the heart of how 4617(j)(3) functions. The "law **functions** as follows: If FHFA decides not to consent to extinguishment, then that decision nullifies state-recognized property interests; FHFA's decision causes *deprivation*, not 'preemption.'" *Id.* at 19:20-22. So, 4617(j)(3)'s purpose and function establish that Congress did not have a "clear and manifest" intent for 4617(j)(3) to "preempt" Nevada law. Rather, "Congress intended 4617(j)(3) to be a provision that authorizes FHFA to make individualized decisions (4617(j)(3)'s **purpose**) that nullify state-recognized property interests (how 4617(j)(3) **functions**)." *Id.* at 19:23-25.

SFR's Motion substantiated this construction by comparing 4617(j)(3) with the two aforementioned self-executing laws, which also comprised 4617(j)(3)'s statutory context— 4617(j)(2) and 4617(j)(4). *Id.* at 20:4-17. Plaintiffs reject this structural and textual approach because 4617(j)(2) and 4617(j)(4) allegedly do not "discuss[] actions that third parties might

government-actor-decision occurs within these subsections. Put differently, the way in which 4617(j)(2) and 4617(j)(4) function does not depend on a government actor's individualized decision. Contrastingly, the way in which 4617(j)(3) functions does depend on a government actor's individualized decision." Dkt. No. 46, 20:6-9.

[8] The relationship between 4617(j)(1) and 4617(b)(2)(J)(ii)—which SFR explored but Plaintiffs refused to discuss—indicates that 4617(j)(1) is not self-executing. Dkt. No. 46, 23:2-15. Instead, the way in which 4617(j)(1) functions depends on FHFA "acting as a conservator" (4617(j)(1)) in ways that are "authorized by this section [4617]." 4617(b)(2)(J)(ii). According to 4617(j)(1), "the provisions of this subsection [4617(j)] shall apply with respect to the Agency in any case in which the Agency is **acting as conservator** . . . ." 4617(b)(2)(J)(ii) elucidates the scope of 4617(j)(1)'s phrase "acting as conservator" by providing that FHFA "may, **as conservator** take any **action authorized by this section** [4617] . . . ." Harmonizing these provisions results in the understanding that when FHFA is "acting as a conservator," as contemplated by 4617(j)(1), FHFA must be doing so in ways that are "authorized by this section [4617]"—just as 4617(b)(2)(J)(ii) instructs.

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 17 -

otherwise be entitled to take against" FHFA's purported property. Dkt. No. 69, 17:17. Yet, 4617(j)(2) provides, "the Agency . . . shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority . . . ." This provision discusses an action (imposing taxation on FHFA) that a third-party ("any local taxing authority") "might otherwise be entitled to take against" FHFA. The same holds for 4617(j)(4), which provides that FHFA "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." This statute discusses an action (subjecting FHFA to penalties or fines) that a third-party ("local taxing authorit[ies]" mentioned in 4617(j)(2)) "might otherwise be entitled to take against" FHFA. Plaintiffs' descriptions of 4617(j)(2) and 4617(j)(4) are, therefore, inaccurate. In sum, Plaintiffs' six-words-less version of 4617(j)(3), *Skylights*' reading of 4617(j)(3) as self-executing, and Plaintiffs' treatment of 4617(j)(2) and 4617(j)(4) do not show that Congress had a "clear and manifest" intent to preempt Nevada law. *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991). Rather, 4617(j)(3)'s text defeats Plaintiffs' express preemption arguments.

## G.   **Plaintiffs' Implied Preemption Arguments Fail**

SFR's Motion explained that because Plaintiffs connect "FHFA's decision regarding consent with FHFA's [4617(b)(2)(D)(ii)] power to 'preserve and conserve,' Congress's intent about the limits of this power to 'preserve and conserve' dictates 4617(j)(3)'s 'preemptive' meaning and scope." Dkt. No. 46, 22:9-11; Dkt. No. 22, 2:10-11, 3:15-18, 17:3-5, 19:21-22, 20:13-16. In at least three 4617(j)(3) cases in this district—including *Skylights*—Plaintiffs connected FHFA's decision concerning consent with its 4617(b)(2)(D)(ii) power to "preserve and conserve." Dkt. No. 43, 2:26-28 in *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 2:15–cv–00267–RFB–NJK (D. Nev. May 26, 2015); Dkt. No. 26-1, 3:16-20 (¶4) (ECF pagination) in *Skylights, LLC v. Byron*, No. 2:15–cv–00043–GMN–VCF (D. Nev. Mar. 23, 2015) (cited by *Skylights*, 2015 WL 3887061, at *2); Dkt. No. 41, 2:22-25 in *Fed. Nat'l Mortg. Ass'n v. SFR Investments Pool 1, LLC*, No. 2:14–cv–02046–JAD–PAL (D. Nev. Mar. 3, 2015). Curiously, Plaintiffs' Response did not cite 4617(b)(2)(D)(ii) or use the phrase "preserve and conserve," perhaps because SFR established that "Congress intended to and did impose limits on FHFA's

KIM GILBERT EBRON

7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 18 -

power to 'preserve and conserve.' If these limits are exceeded, then so-called 'preemption' cannot occur." Dkt. No. 46, 22:12-13.

And so, Plaintiffs opine that SFR's implied preemption arguments are unavailing because Congress's supposed purpose in enacting 4617(j)(3) was to protect the Enterprises from "conflicting state laws." Dkt. No. 69, 15:11. Initially, 4617(j)(3)'s text does not mention "state law." Contrastingly, 4617(j)(2) mentions "State law"; 4617(j)(2) shows that Congress knows how to draft a paragraph within subsection 4617(j) that addresses "state law." That Congress did not do so in 4617(j)(3) defeats Plaintiffs' insights about "conflicting state laws."[9] Moreover, Plaintiffs' insistence that SFR "flips the default rule . . . as if Congress had decreed that FHFA's property interests *are* subject to extinguishment," Dkt. No. 69, 16:22, is erroneous; 4617(j)(3) is not about a "rule," default or otherwise. Instead, 4617(j)(3) is about Congress's intent to authorize FHFA to make individualized decisions concerning consent. Plaintiffs simply refuse to realize that 4617(j)(3) is neither absolute nor self-executing. In fact, Plaintiffs' six-words-less version of 4617(j)(3), illusion-of-self-execution, and absolute-prohibition-fiction appear in, and thus defeat, Plaintiffs' implied preemption contentions. Lastly, Plaintiffs complain that SFR inadequately supported its argument that HERA refrains from preempting state contract law. This is inaccurate; SFR relied on a recent Ninth Circuit decision construing FIRREA, much like Plaintiffs do throughout their Response.[10] Dkt. No. 46, 24:23 (citing *Bank of Manhattan*, 778 F.3d at 1136). At bottom, Plaintiffs' implied preemption arguments fail.

### H.   Plaintiffs Misunderstand Standing

Plaintiffs' standing arguments are meritless for two reasons. First, they ignore SFR's positions, including how a federal regulation (12 C.F.R. § 1237.3(a)(7)) precludes the Enterprises from having standing. Second, Plaintiffs erroneously opine that SFR did not challenge FHFA's

---

[9] Besides, if FHFA's decision concerning consent had actually comported with due process—which it did not do—then such a decision has the capacity to protect the Enterprises from so-called "conflicting state laws."

[10] Plaintiffs accuse SFR of misunderstanding FHFA's position about lien "priming" in *Sonoma*, 710 F.3d 987. Plaintiffs insist that FHFA did not argue that "priming" was synonymous with "extinguishment." Yet, FHFA's brief asserted "thus, in the event of a foreclosure, the PACE lender will be paid first from the proceeds of the foreclosure sale, and the pre-existing mortgage holder will, in all likelihood, be the party that suffers the loss." Dkt. No. 47-2, 6 (non-ECF pagination).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1    standing. To the contrary, argument "K" in SFR's Motion established that the FAC's allegations

2    about the Enterprises "purchasing" mortgages—in conjunction with Freddie's "Borrower

3    Notification," 4502(17), and 4617(b)(19)(B)(ii)—reveal that FHFA cannot "succeed to"

4    securitized mortgages, thereby preventing it from being able to bring this suit. Notably, SFR's

5    Response to Plaintiffs' Motion for Summary Judgment fully explores "mortgages held in trust"

6    and 4617(b)(19)(B). All told, Plaintiffs misunderstand standing.

7                              **III.   CONCLUSION**

8            For the foregoing reasons, and those in SFR's Motion, this Court should dismiss the FAC

9    with prejudice. SFR's Motion—from beginning to end—asserted that Plaintiffs want to transform

10   due process deprivations into preemption. Not once did Plaintiffs deny this intention, a grab for

11   power that will cause due process to seldom apply and reduce state-recognized property interests

12   to sentimental aphorisms. All this from a statute that lacks a procedure to request FHFA's consent

13   or an opportunity to contest FHFA's decision. All this from a law that Plaintiffs rewrite by erasing

14   six words, both by hand and by interpretive error. Ours is not, however, a system so susceptible to

15   government might that it is willing to sacrifice individual right "without due process of law." And

16   it has been this way since 1791. And it will remain this way if this Court prevents Plaintiffs from

17   transforming due process deprivations into preemption. Deprivation cannot become preemption.

18           RESPECTFULLY SUBMITTED this ___18th___ day of January, 2016.

19                              **KIM GILBERT EBRON**

20

21                              */s/Jesse N. Panoff_____*
                                HOWARD C. KIM, ESQ. (SBN 10386)
22                              JACQUELINE A. GILBERT, ESQ. (SBN 10593)
                                DIANA CLINE EBRON, ESQ. (SBN 10580)
23                              JESSE N. PANOFF, ESQ. (SBN 10951)
                                *Attorneys for SFR Investments Pool 1, LLC*
24

25

26

27

28

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 20 -

1
2
3

**CERTIFICATE OF SERVICE**

4       I HEREBY CERTIFY that on this 18th day of January, 2016, pursuant to FRCP 5, I

5   served via the CM/ECF filing system the foregoing Reply to the following parties:

6   Asim Varma, Esq. Asim.Varma@aporter.com

7   David B. Bergman, Esq. David.bergman@aporter.com

8   Dana Jonathon Nitz, Esq. dnitz@wrightlegal.net, ebaker@wrightlegal.net,

9   jalexy@wrightlegal.net, mresnick@wrightlegal.net

10   Elliott Mogul, Esq. Elliott.mogul@aporter.com

11   Howard Cayne, Esq. Howard.cayne@aporter.com

12   John D. Tennert, Esq. jtennert@fclaw.com, pcarmon@fclaw.com

13   Jory C. Garabedian, Esq. jgarabedian@aldridgepite.com, npetty@aldridgepite.com

14   Leslie Bryan Hart, Esq. lhart@fclaw.com, pcarmon@fclaw.com

15   Roger P. Croteau, Esq. croteaulaw@croteaulaw.com

16   John H. Maddock III, Esq., jmaddock@mcguirewoods.com

17   Tennille J. Checkovich, Esq., tcheckovich@mcguirewoods.com

18   Michael W. Stark, Esq., mstark@mcguirewoods.com

19   Amy F. Sorenson, Esq. asorenson@swlaw.com

20   Robin E. Perkins, Esq., rperkins@swlaw.com

21
22
23                                          */s/Jacqueline A. Gilbert*_____

                                       An Employee of KIM GILBERT EBRON

24
25
26
27
28

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301