FENNEMORE CRAIG, P.C.
Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel:  (775) 788-2228
Fax:  (775) 788-2229
lhart@fclaw.com,
jtennert@fclaw.com
*Attorneys for Federal Housing Finance
Agency and Federal Home Loan Mortgage
Corporation*

ARNOLD & PORTER LLP
Elliott Mogul, Esq. (*Pro Hac Vice*)
David Bergman, Esq. (*Pro Hac Vice*)
601 Massachusetts Ave., N.W.
Washington, DC 20001
Tel:  (202) 942-5000
Fax:  (202) 942-5999
Elliott.Mogul@aporter.com,
David.Bergman@aporter.com
*Attorneys for Federal Housing Finance
Agency*

MCGUIREWOODS LLP
John H. Maddock III, Esq. (*Pro Hac Vice*)
Tennille Checkovich, Esq. (*Pro Hac Vice*)
Michael W. Stark, Esq. (*Pro Hac Vice*)
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Tel:  (804) 775-1000
Fax:  (804) 775-1061
jmaddock@mcguirewoods.com
tcheckovich@mcguirewoods.com
mstark@mcguirewoods.com
*Attorneys for Federal Home Loan
Mortgage Corporation*

SNELL & WILMER
Amy Sorenson, Esq. (SBN 12495)
Robin E. Perkins, Esq. (SBN 9891)
15 W South Temple #1200
Salt Lake City, Utah 84101
Tel:  (801) 257-1900
Fax:  (801) 257-1800
asorenson@swlaw.com;
rperkins@swlaw.com
*Attorneys for Federal National Mortgage
Association*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| THE FEDERAL HOUSING FINANCE AGENCY; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION; AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC; NEVADA NEW BUILDS, LLC; and LAS VEGAS DEVELOPMENT GROUP, LLC,<br><br>Defendants. | Case No. 2:15-cv-01338-GMN-CWH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR COUNTERMOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT LVDG'S COUNTER-MOTION FOR RULE 56(d) RELIEF (DKT #95)** |

///

///

///

///

///

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      Section 4617(j)(3) Protects the Property Interests of the Enterprises ......................................2

    A.   Defendants Rely on a Misinterpretation of HERA to Support their Incorrect Assertion that Securitization Impacts the Applicability of the Federal Foreclosure Bar ..................3

       1.   The Conservator Succeeds to All Mortgages Owned By the Enterprises, Including Those Securitized in Common Law Trusts ................................................................3

       2.   Defendants' Analysis of HERA Is Incorrect ..............................................................4

    B.   The Enterprises' Ownership Interest Need Not Have Been Recorded for Them to Have a Protected Property Interest ........................................................................................10

    C.   The Form Language in the Assignments Cannot Deprive the Enterprises of Their Property Interests ....................................................................................................11

    D.   Defendants' Objections to Plaintiffs' Evidence Fail as a Matter of Law .......................12

II.     The Federal Foreclosure Bar Preempts Contrary State Law .................................................14

III.    Defendants' Due Process Argument is Without Basis in Law or Fact ....................................15

IV.     All Properties that Meet the Definition in the Complaint Qualify as Class Properties, Including Those Sold in HOA Sales that the Ombudsman Records Omit ...........................16

V.      LVDG's Counter-Motion for Rule 56(d) Relief Should be Denied ...............................17, 18

CONCLUSION ...................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1597 Ashfield Valley Trust v. Fannie Mae*,
  No. 2:14-cv-2123-JCM, 2015 WL 4581220 (D. Nev. July 28, 2015) ...................................... 1

*5312 La Quinta Hills LLC, vs. BAC Home Loans Serv'g LP*,
  No. A-13-693427-C (Nev. Dist. Ct. Jan. 6, 2016) .................................................... 2

*Adobe Systems, Inc. v. Christensen*,
  2015 WL 9487887 (9th Cir. 2015) ........................................................................... 13

*Bank of Manhattan, N.A. v. FDIC*,
  778 F.3d 1133 (9th Cir. 2015) ................................................................................ 14

*Beal Bank, SSB v. Nassau Cty.*,
  973 F. Supp. 130 (E.D.N.Y. 1997) ......................................................................... 15

*Berezovsky v. Moniz*,
  No. 2:15-cv-1186-GMN-GWF, 2015 WL 8780198 (D. Nev. Dec. 15, 2015)............... 1, 2, 11

*Bever v. Cal-W. Reconveyance Corp.*,
  No. 1:11-CV-1584 AWI SKO, 2014 WL 5500940 (E.D. Cal. Oct. 30, 2014) ...................... 13

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ................................................................................ 10

*Curley v. Wells Fargo & Co.*,
  No. 13-CV-03805 NC, 2015 WL 4623658 (N.D. Cal. July 31, 2015) .................................. 13

*Edelstein v. Bank of New York Mellon*,
  286 P.3d 249 (Nev. 2012) ......................................................................................... 2

*Elmer v. Freddie Mac*,
  No. 2:14-cv-1999-GMN-NJK, 2015 WL 4393051 (D. Nev. July 14, 2015)........................... 1

*Fannie Mae v. SFR Investments Pool 1, LLC*,
  No. 2:14-CV-2046-JAD-PAL, 2015 WL 5723647 (D. Nev. Sept. 28, 2015) ......................... 1

*Garand v. JPMorgan Chase Bank*,
  532 F. App'x 693 (9th Cir. 2013) ........................................................................... 10

*Health All. Network, Inc. v. Cont'l Cas. Co.*,
  245 F.R.D. 121 (S.D.N.Y. 2007) *aff'd*, 294 F. App'x 680 (2d Cir. 2008)............................ 13

*In re Mortgage Elec. Registration Sys., Inc.*,
  754 F.3d 772 (9th Cir. 2014)..................................................................................... 10

*In re Montierth*,
　354 P.3d 648 (Nev. 2015) ................................................................. 2, 11

*Malek v. Fed. Ins. Co.*,
　994 F.2d 49 (2d Cir. 1993) ...................................................................... 12

*My Global Village, LLC v. Fannie Mae*,
　No. 2:15-cv-0211-RCJ-NJK, 2015 WL 4523501 (D. Nev. July 27, 2015) ............................. 1

*Premier One Holdings, Inc. v. Fannie Mae*,
　No. 2:14-cv-02128-GMN-NJK, 2015 WL 4276169 (D. Nev. July 14, 2015) ......................... 1

*Ralls Corp. v. CFIUS*,
　758 F.3d 296 (D.C. Cir. 2014) ................................................................. 16

*Saticoy Bay, LLC Series 1702 Empire Mine v. Fannie Mae*,
　No. 2:14-CV-1975-KJD-NJK, 2015 WL 5709484 (D. Nev. Sept. 29, 2015) ........................... 1

*Saticoy Bay LLC Series 9641 Christine View vs. Fannie Mae*,
　No. A-13-690924-C (Nev. Dist. Ct. Dec. 8, 2015) ................................................. 2

*Skylights v. Byron*,
　No. 2:15-cv-0043-GMN-VCF, 2015 WL 3887061 (D. Nev. June 24, 2015) ................... 1, 15

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
　576 F.3d 1040 (9th Cir. 2009) .................................................................. 14

*United States v. James Daniel Good Real Prop.*
　510 U.S. 43 (1993) .............................................................................. 16

*Williston Investment Grp., LLC v. JP Morgan Chase Bank, NA*,
　No. 2:14-cv-2038-GMN-PAL, 2015 WL 4276144 (D. Nev. July 14, 2015) ......................... 1

**Statutes**

12 U.S.C. § 1719(d) ................................................................................. 9

12 U.S.C. § 4617(b)(2) ....................................................................... 5, 7, 9

12 U.S.C. § 4617(b)(19) ....................................................................... *passim*

12 U.S.C. § 4617(j)(3) ....................................................................... *passim*

**Other Authorities**

Fed. R. Evid. 803 .............................................................................. 12, 13

Fed. R. Evid. 1006 ................................................................................. 13

Restatement (Third) of Prop.: Mortgages § 5.4 ..................................................... 2

**INTRODUCTION**

As described in Plaintiffs' Counter-Motion for Summary Judgment (Dkt. No. 70) ("MSJ"), federal law provides that while the Enterprises are in FHFA conservatorships, none of their property "shall be subject to … foreclosure[] … without the consent of [FHFA]."  12 U.S.C. § 4617(j)(3).[1] In this case, the Enterprises have a property interest in the Deeds of Trust encumbering the seven Properties identified in the CFAC.  Therefore, when Defendants purchased the Properties in HOA Sales, Defendants took their interests subject to the Deeds of Trust, as the Deeds of Trust could not have been extinguished.  The Properties are representative of all three factual scenarios in which properties of Putative Class members fit—the Properties are burdened by Enterprise liens for which the Deeds of Trust, while owned by an Enterprise, name as beneficiary of record (1) the Enterprise itself; (2) the Enterprise's servicer, or (3) Mortgage Electronic Registration System ("MERS"), as the Enterprise's nominee.  Regardless of which of these three factual categories each Property falls into, the governing law is the same:  the Enterprises own the respective Deed of Trust, and the property interest it represents was protected by the Federal Foreclosure Bar at the time of the relevant HOA Sale.

Defendants' Oppositions repeat arguments they previously made in their Motion to Dismiss, often without addressing the principal counterarguments and contrary authorities Plaintiffs asserted in their opposition to that motion.  Defendants also raise additional arguments that have already been rejected by other courts in this District in nine related cases holding that HOA foreclosure sales cannot extinguish the property interests of Fannie Mae and Freddie Mac.[2]  In addition, Nevada

---

[1]   Capitalized terms not defined herein shall take on the definition in the Motion for Summary Judgment.

[2]   *See Skylights v. Byron*, No. 2:15-cv-0043-GMN-VCF, 2015 WL 3887061 (D. Nev. June 24, 2015); *Elmer v. Freddie Mac*, No. 2:14-cv-1999-GMN-NJK, 2015 WL 4393051 (D. Nev. July 14, 2015); *Premier One Holdings, Inc. v. Fannie Mae*, No. 2:14-cv-02128-GMN-NJK, 2015 WL 4276169 (D. Nev. July 14, 2015); *Williston Investment Grp., LLC v. JP Morgan Chase Bank, NA*, No. 2:14-cv-2038-GMN-PAL, 2015 WL 4276144 (D. Nev. July 14, 2015); *My Global Village, LLC v. Fannie Mae*, No. 2:15-cv-0211-RCJ-NJK, 2015 WL 4523501 (D. Nev. July 27, 2015); *1597 Ashfield Valley Trust v. Fannie Mae*, No. 2:14-cv-2123-JCM, 2015 WL 4581220 (D. Nev. July 28, 2015); *Fannie Mae v. SFR Investments Pool 1, LLC*, No. 2:14-CV-2046-JAD-PAL, 2015 WL 5723647 (D. Nev. Sept. 28, 2015); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fannie Mae*, No. 2:14-CV-1975-KJD-NJK, 2015 WL 5709484 (D. Nev. Sept. 29, 2015); *Berezovsky v. Moniz*, No. 2:15-cv-1186-GMN-GWF, 2015 WL 8780198 (D. Nev. Dec. 15, 2015).

state courts have granted Fannie Mae and its servicers summary judgment in two cases raising the same legal issues.[3]  Accordingly, the Court should grant Plaintiffs' Counter-Motion for Summary Judgment.

<u>**ARGUMENT**</u>

**I.**     **Section 4617(j)(3) Protects the Property Interests of the Enterprises**

Under Nevada law and pursuant to the Enterprises' relationships with their servicers or their nominee MERS, either Fannie Mae or Freddie Mac owned the promissory note and Deed of Trust associated with each of the Properties at the time of the respective HOA Sales.  *See* MSJ at 17-29 (citing *In re Montierth*, 354 P.3d 648, 650-51 (Nev. 2015); *Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 257-58 (Nev. 2012); Restatement (Third) of Prop.: Mortgages § 5.4); *see also Berezovsky*, 2015 WL 8780198 (adopting Restatement approach to hold Freddie Mac had a protected property interest in related case).

Defendants in their responsive briefing do not contest this interpretation of Nevada law; indeed, they never even discuss *Montierth*, *Edelstein*, or the Restatement.  Thus, Defendants have conceded that under Nevada law, the Enterprises owned the Deeds of Trust, giving them secured property interests, regardless of whether the Enterprises themselves, their servicers, or their nominee MERS, was the beneficiary of record at the time of the relevant HOA Sale.

Defendants instead reiterate arguments from their Motion to Dismiss to argue that the Federal Foreclosure Bar did not protect the Deeds of Trust from extinguishment.  *First*, Defendants propose a strained reading of HERA to contend that the statute prevents the Conservator from "succeed[ing] to" securitized mortgages.  *Second*, Defendants repeat the argument that the Enterprises cannot have a property interest unless a Deed of Trust was recorded in their name, an argument at odds with principles of Nevada law fully set forth in Plaintiffs' MSJ and that Defendants failed to challenge.  *Third*, Defendants revive their argument that the language in some of the recorded assignments of the deeds of trust raises a factual dispute regarding the Enterprises'

---

[3]     *See Saticoy Bay LLC Series 9641 Christine View vs. Fannie Mae*, No. A-13-690924-C (Nev. Dist. Ct. Dec. 8, 2015); *5312 La Quinta Hills LLC, vs. BAC Home Loans Serv'g LP*, No. A-13-693427-C (Nev. Dist. Ct. Jan. 6, 2016).

ownership, though they fail to distinguish, or even mention, any of the black-letter law on assignments that demonstrate that the assignment language did not affect the Enterprises' ownership interest. *Finally*, Defendants raise a series of challenges to the evidence Plaintiffs submitted with their Counter-Motion for Summary Judgment, though none that defeat summary judgment. All of these arguments fail as a matter of law.

A.   **Defendants Rely on a Misinterpretation of HERA to Support their Incorrect Assertion that Securitization Impacts the Applicability of the Federal Foreclosure Bar**

As in their Motion to Dismiss, Defendants argue in their Oppositions that the Court cannot resolve whether the Enterprises had protected property interests without first determining whether the Enterprises securitized the loans corresponding to the Properties. But Defendants, and in particular SFR, appear to have shifted the focus of that argument. Instead of concentrating on whether securitization would prevent an Enterprise from owning a particular loan, Defendants now contend that if a loan was securitized, FHFA as Conservator could not have succeeded to the Enterprises' ownership interest. Defendants argue that the Conservator cannot "succeed" to the ownership of such loans because HERA says that these loans "shall be held" by the Conservator, as if "to succeed" and "to hold" were mutually exclusive. These actions, of course, are not opposites, and there is nothing in the text of HERA to suggest they should be read as such. Defendants' argument thus relies on an analysis of HERA that supposes restrictions where there are none, violating principles of statutory construction, congressional intent, and common sense.

1.   **The Conservator Succeeds to All Mortgages Owned By the Enterprises, Including Those Securitized in Common Law Trusts**

As discussed in Plaintiffs' Opening Brief, the Enterprises bundle individual loans into pools and sell certificates that entitle the certificate-holders to a contractually specified portion of the payments borrowers make on the mortgages in the pool. *See* MSJ at 26-29 (citing Decl. of Arthur Johnson ¶¶ 5-6; Decl. of Mark Hanson ¶ 5-6). Those pooled loans are placed into one of a number of common-law trusts of which an Enterprise is trustee, and the Enterprises maintain ownership and control over the mortgages in these pools, though their control is subject to certain contractual obligations within the trust agreements. *Id.* For example, the trust agreements require the

Enterprises to remove mortgages from their securitization trusts under various conditions, such as default of the borrower. *See* Johnson Decl. Ex. A §§ 2.4-2.7. The trust agreements list circumstances where the Enterprises are *contractually bound* to remove mortgages from the trust, as well as other conditions that give the Enterprises the option to do so. *See id.* § 2.4 (after loans are placed into securitization trust, "Mortgage Loans may be paid off, purchased, liquidated, foreclosed upon, or become REO Property (as permitted and described in this Trust Agreement), [and] Mortgage Loans may be substituted as provided in Section 2.6"); *id.* § 2.5 (listing various conditions requiring Fannie Mae or giving Fannie Mae the option to remove loans from the securitization trust); *see also* Hanson Decl. Ex. A § 1.02(c) (describing circumstances pursuant to which Freddie Mac is required, or has the option, to remove mortgages from a pool).

### 2.     Defendants' Analysis of HERA Is Incorrect

Defendants base their argument that the Conservator cannot succeed to the Enterprises' ownership of securitized loans, and therefore, the Federal Foreclosure Bar cannot protect those interests, on a HERA provision, 12 U.S.C. § 4617(b)(19)(B), that concerns "mortgages held in trust." SFR Opp. at 8-23; LVDG Opp. at 9. Defendants' analysis is somewhat convoluted, but it appears to rest on the notion that because this provision requires that "any mortgage…held in trust…by" an Enterprise "shall be held by the [C]onservator," 12 U.S.C. § 4617(b)(19)(B)(i)-(ii), the provision bars the Conservator from succeeding to the Enterprise's interest. SFR summarizes this argument as "holding is an exception to succession." But holding is *not* an exception to succession; those terms are perfectly compatible, not contradictory or mutually exclusive. Defendants' argument would ascribe to those terms a meaning that the plain language of the provision does not convey and that Congress surely did not intend.

### a.     HERA's Limited Restrictions on the Conservators' Powers Over Mortgages Held in Trust Support that the Conservator Succeeded to the Ownership of Those Mortgages

Defendants' statutory analysis depends on the proposition that because 12 U.S.C. § 4617(b)(19)(B) both (1) refers to "mortgages held in trust" and (2) falls under the caption "general exceptions," it carves securitized mortgages out of *all* of the Conservator's other powers. *See* SFR Opp. at 12-14. Thus, according to Defendants, the Conservator never succeeded to Enterprises'

ownership interest as trustee and, as a result, mortgages in the Enterprises' securitization trusts cannot become "property of the Agency" as Conservator for purposes of the Federal Foreclosure Bar. *Id.* This reading is internally inconsistent and inherently implausible. As a matter of law, it must be rejected.

Defendants' reading of Section 4617(b)(19)(B) is inherently implausible, principally because it would insert an *implicit* all-encompassing abnegation of the entirety of the Conservator's powers into a provision that *expressly* sets forth a far more limited exception. HERA provides that upon the inception of conservatorship, the Conservator succeeded to all of the Enterprises' rights, titles, and powers over its assets, with the statutory authority to manage, preserve, and conserve those assets as it, in its discretionary business judgment, sees fit. *See* 12 U.S.C. § 4671(b)(2)(A)-(B), (D), (G). Accordingly, absent an applicable exception, HERA grants the Conservator the statutory authority to transfer or sell any of the Enterprises' assets to satisfy creditors. Though SFR relies heavily on the section heading, "General Exceptions," SFR ignores that the text of Section 4617(b)(19)(B) does not fully exempt any property from the powers articulated in the preceding sections, but rather delineates a far more limited exception: In substance, it directs the Conservator to manage securitized mortgages according to the terms of the underlying trust instruments, and places those mortgages off-limits to the Enterprises' general creditors.

Section 4617(b)(19)(B)(ii), for example, contains no broad exception to the Conservator's power:

> Any mortgage … described in clause (i) shall be held by the conservator … for the beneficial owners of such mortgage, pool of mortgages, or interest i*n accordance with the terms of the agreement creating such trust* … .

12 U.S.C. § 4617(b)(19)(B)(ii)(emphasis added). Rather, the provision makes clear that while a mortgage is held in trust, the Conservator's power over that asset remains constrained by the terms of the relevant trust agreement. Effectively, HERA ensures that conservatorship will result in no change in the management of the securitized mortgages. This provision would be unnecessary and superfluous if the Enterprises had no property interest in "mortgages held in trust," or if the Conservator did not succeed to that interest, because in that event the mortgages would not be subject to the Conservator's power.

The preceding section only further confirms this analysis:

> Any mortgage … held in trust … by a regulated entity for the benefit of any person other than the regulated entity shall not be available to satisfy the claims of creditors generally, except that nothing in this clause shall be construed to expand or otherwise affect the authority of any regulated entity.

12 U.S.C. § 4617(b)(19)(B)(i).  As with Section 4617(b)(19)(B)(ii), this provision would be unnecessary and superfluous if the Enterprises had no property interest in "mortgages held in trust," because in that event, the mortgages would not be "available to satisfy the claims of creditors."  The effect of the provision is to create an express, limited exception—of the assets in which the Enterprises and the Conservator hold a property interest, generally property interests are available to satisfy creditors but mortgages held in trust are not—not a boundless, implied exception from all of the Conservator's powers.  Furthermore, the provision makes clear that it does not "expand or otherwise affect the authority" of the Enterprises, similar to how Section 4617(b)(19)(B)(ii) requires the Conservator to continue to follow the terms of the trust agreements.  Thus, to the extent the provision has any relevance, it confirms that the Enterprises (and therefore the Conservator) *do* maintain a property interest in securitized mortgages.

The last provision of Section 4617(b)(19)(B) directs the Conservator to "calculate" any "contingent or unliquidated claim related to the mortgages held in trust."  12 U.S.C. § 4617(b)(19)(B)(iii).  Accordingly, it appears to have no relevance to what the Conservator may do with such mortgages, and merely prescribes the method of computing damages for breach of the trust agreements.  Defendants argue that "[i]f FHFA does not 'hold' a mortgage 'held in trust' for the 'benefit of any person other than' an Enterprise, then FHFA will be subject to 'liability . . . for damages.'"  SFR Opp. at 17.[4]  But this interpretation has no support in the text, which at no point creates any claim or imposes any new liability.  Indeed, Defendants' argument makes connections between the provisions where there are none; there is no provision that suggests that any of the potential damages the Conservator must calculate relate to any purported "failure" to keep loans in

---

[4]   It is unclear how this conclusion, if true, would serve Defendants' arguments.  Defendants do not purport to be certificate holders in the mortgage pools and thus would have no standing to bring any action against FHFA for failing to keep a mortgage in a trust.  Indeed, Defendants' position is that their HOA Sale extinguished the Deeds of Trust entirely.

1   trusts.  But even if Defendants' interpretation were true, at a minimum, the provision would add no

2   support to Defendants' contention that the Conservator did not succeed to the mortgages held in

3   trust along with the Enterprises' other assets.

           **b.**      **"Holding" and "Succeeding" to Mortgages Are Not**
                  **Contradictory; They Are Complementary**

5   As the preceding analysis of Section 4617(b)(19)(B) confirms, there is no textual support in

6   that provision for the conclusion that the Conservator does not succeed to "mortgages held in trust."

7   Accordingly, Defendants attempt to create an inference that the concepts of "succession" and

8   "holding" are in tension by arguing that Section 4617(b)(19)(B) (concerning mortgages held in

9   trust) and Section 4617(b)(2)(A)(i) (concerning succession) have a parallel structure, suggesting

10  that the former somehow replaces or negates the latter.  *See* SFR Opp. at 11-13.  This argument

11  fails; these provisions do not have a parallel structure, and even if they did, it would not support an

12  inference that these provisions are in tension with each other.

13  Indeed, Defendants' attempt to create a dichotomy between "holding" and "succeeding"

14  breaks down into circular reasoning the more Defendants attempt to explain it: Defendants argue

15  that (1) Congress did not empower FHFA to succeed to mortgages held in trust because (2) HERA

16  provides that FHFA should hold these mortgages in trust, and (3) "holding is an 'exception' to

17  succession."  SFR Opp. at 18-19, 20 n.42.  Other than Defendants' repetition of this third point,

18  there is no support that "holding" is meant to be an exception to "succession."  The plain reading of

19  Section 4617(b)(19)(B), rather, is that while mortgages are held in trust, the Conservator, having

20  succeeded to the Enterprises' ownership of those mortgages, must hold those mortgages per the

21  terms of the trust agreements and may not use them to pay off the Enterprises' creditors or

22  otherwise manage them in violation of the trust agreements.  The terms "to hold" and "to succeed"

23  are thus complementary, not contradictory.

           **c.**      **Defendants' Argument That Loans May Never Be Removed from**
                  **Trust Pools Is Belied by the Text of HERA and Would Harm the**
                  **Enterprises and Homeowners that HERA Was Meant to Protect**

26  Defendants' interpretation of Section 4617(b)(19)(B) also fails because it would require

27  securitization to be a "one-way street"—loans may be placed in securitization trusts but never be

1    removed.  This is inconsistent with the text of the statute and creates absurd results that would harm

2    the Enterprises and homeowners, directly undermining Congress's goals in passing HERA in the

3    midst of a national housing crisis.

4         The textual inconsistencies have already been discussed, *supra* at 5-6.  *First*, it would be

5    absurd for HERA to mandate that the Conservator manage mortgages held in trust in any particular

6    way if, as Defendants contend, the Conservator never succeeded to any interest in those mortgages

7    and therefore had no power to manage them at all.  *Second*, if, as Defendants acknowledge, HERA

8    authorizes FHFA to manage securitized loans "in accordance with the terms of the [trust]

9    agreement," then it would be absurd for HERA to also preclude FHFA from exercising the trustee's

10   rights and responsibilities under the agreement to remove loans from the trust.  As noted above, the

11   Enterprises' trust agreements detail a significant number of circumstances under which the

12   Enterprises are either required or have the option to remove loans from securitization trusts.

13        There are important reasons for including provisions in the trust agreements that require or

14   permit the Enterprises to remove mortgages from trusts.  When a borrower defaults or falls behind

15   in making payments, removing a mortgage from a trust (which, under the governing trust

16   instruments, requires a corresponding infusion of cash into the trust[5]) reduces administrative costs

17   by eliminating the monthly advances the Enterprises and/or their servicers would otherwise need to

18   keep making to the trust to cover the borrower's delinquent payments.  Further, the Enterprises and

19   their servicers are able to offer homeowners a wider variety of loan modification or repayment plans

20   that are not permitted by the terms of a trust agreement once a loan is removed from a trust.

21   Working with homeowners in this way minimizes the Enterprises' losses and decreases the chance

22   that a homeowner will lose their house in foreclosure.[6]  Defendants' argument would require the

---

23   [5]    *See*, *e.g.*, Johnson Decl. Ex. A §§ 2.5(4), 2.6 -2.7.

24   [6]    The circumstances under which securitized loans may be or must be removed from pools and
     returned to the Enterprises portfolios are also described in documents governing management of
25   trusts.  *See*, *e.g.*, Fannie Mae Servicing Guide at A-1-3-02 (requiring servicers to repurchase loans
     under certain conditions when the terms of the trust agreement have required Fannie Mae to remove
26   loan from pool); *id.* at D2-3.1-02 (explaining the limits on loan modifications that are possible while
     loan remains in pool and directing servicers to remove loans from pool when more extensive
27   modifications are possible); *id.* at A1-3-07, F-1-36 (describing procedures for servicers to reclassify
     loans out of pool and into Fannie Mae's portfolio); *see also* Exhibit to the Hanson Decl. (Dkt. No.
28   69-5) (Freddie Mac PC Master Trust Agreement).

1    Enterprises to retain a problematic loan in the applicable trust, hampering their ability to manage the

2    trust pursuant to their duties in the trust agreement and meet their goals in supporting a healthy

3    secondary nationwide mortgage market.  This result would directly undermine the purpose of

4    Congress in enacting HERA to address a nationwide housing crisis that threatened homeowners and

5    the Enterprises.

6           In enacting HERA, Congress legislated against a backdrop in which it was common for the

7    Enterprises to use common law trusts to securitize loans in their efforts to fulfill their statutory

8    mission.  Indeed, the Enterprises' federal statutory charters expressly address securitization, and it is

9    apparent that Congress expected and intended them to hold title to securitized loans as trustee.  *See,*

10   *e.g.*, 12 U.S.C. § 1719(d) (discussing issuance of mortgage backed securities based upon mortgages

11   owned by Fannie Mae); 12 U.S.C. § 1455 (discussing Freddie Mac's authority to issue mortgage

12   backed securities).  Congress then enacted the Federal Foreclosure Bar, the plain language of which

13   protects *all* of the Enterprises' property while it is in conservatorship.  Nowhere does the text of

14   HERA suggest any exception to that protection for property the Enterprises own as trustee.  To the

15   contrary, Section 4617(j)(3) protects property interests to which FHFA would succeed as

16   conservator, thereby enabling the Conservator to continue the Enterprises' normal business

17   operations.  *See* 12 U.S.C. § 4617(b)(2)(B) ("The Agency may, as conservator or receiver take over

18   the assets of and operate the regulated entity . . . and conduct all business of the regulated entity.").

19   It would be anomalous to the point of absurdity to assume that Congress intended to permit the

20   Enterprises to securitize loans via common-law trusts where they maintain ownership of the loans

21   as trustee, but then exclude those loans from the protection that the Federal Foreclosure Bar confers

22   and prevent the Enterprises from managing those trusts pursuant to their trust agreements while in

23   conservatorship.

24          Indeed, the effect of Section 4617(b)(19)(B) is to confer even greater protection onto

25   mortgages held in trust, which certainly promotes the Enterprises' role of maintaining a robust and

26   healthy secondary mortgage market considering that these mortgages are at the core of the

27   Enterprises' statutorily authorized securitization function.  Not only are such mortgages protected

28   from attachment, garnishment, foreclosure, and the other actions prevented by the Federal

Foreclosure Bar, but they are also protected from creditors' claims.  Defendants' invocation of

Section 4617(b)(19)(B) to weaken the statutory protection given these mortgages, in an attempt to

permit an HOA Sale to extinguish the mortgage, would undermine this vital congressional purpose.

For all of the above reasons, whether any particular loan was securitized at the time of an

HOA sale makes no legal difference; the Enterprises maintain an ownership interest in securitized

loans, and the Conservator succeeds to that interest.  Thus, the Federal Foreclosure Bar acts to

protect all loans owned by the Enterprises.

> **B.**     **The Enterprises' Ownership Interest Need Not Have Been Recorded for Them to Have a Protected Property Interest**

Defendants' Oppositions also challenge whether the Enterprises had a protectable property

interest on grounds already rejected by this Court.  Despite its failure to argue that *Montierth* does

not control or that Nevada does not follow the Restatement approach to ownership of loans, LVDG

continues to question whether the Enterprises' interests can be protected by the Federal Foreclosure

Bar in those cases where the Enterprises were not named as the beneficiary of record in the publicly

recorded documents.  LVDG Reply at 7, 10.  As discussed in the opening brief, there is no

requirement that the owner of a loan be identified in a recorded document.  MSJ at 23-24.  Rather,

the lien itself, in this case the Deeds of Trust, must be recorded to be enforced against the borrower

and to have priority over other potential claimants.  Here, there is no dispute that the Deeds of Trust

were recorded prior to the respective HOA Sales.

If the rule were as LVDG contends, and every deed of trust must be recorded *in its owner's

name*, then MERS could never be the beneficiary of record of a deed of trust as nominee for a

lender and the lender's successors and assigns.  But that is directly contrary to a number of Ninth

Circuit decisions regarding MERS and its role in the consumer mortgage industry.  *See In re

Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772, 776-77 (9th Cir. 2014) (with mortgages

registered with MERS, "[t]he MERS member takes possession of the note, and MERS is recorded

as the beneficiary under the deed of trust.  The note is almost always assigned to others, often

several times over.  If the note is assigned to a MERS member, MERS remains the beneficiary

under the deed of trust."); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th

Cir. 2011) (similar); *cf. Garand v. JPMorgan Chase Bank*, 532 F. App'x 693, 696 (9th Cir. 2013) (holding that there was no obligation to record the transfer of a note).  Furthermore, *Montierth*'s adoption of the Restatement approach, which explains that investors often designate their servicers as beneficiary of record while maintaining their ownership interest, confirms that there is no requirement under Nevada law that parties purchasing a loan record that transaction if the subject deed of trust is already recorded.  354 P.3d at 650-51.  This Court has already applied this principle in a related case.  *See Berezovsky*, 2015 WL 8780198, at *3 (holding Freddie Mac had a protected property interest while Freddie Mac's servicer, not Freddie Mac itself, was beneficiary of record).

## C.   The Form Language in the Assignments Cannot Deprive the Enterprises of Their Property Interests

Defendants repeat their arguments that language in certain of the assignments of the Deeds of Trust cast doubt on the Enterprises' ownership of the notes or the Deeds of Trust.  *See* LVDG Opp. at 7-8, 10; SFR Opp. at 24-25.  As Plaintiffs explained in their Opening Brief, the use of boilerplate form language in these assignments cannot enlarge the property rights that the transferors had to assign to their transferees.  This principle is supported by the black-letter case law regarding assignments, including case law specifically addressing the circumstances here, where the assignment of a deed of trust appears to convey a greater interest than the transferor had.  *See* MSJ at 24-26.  Defendants never mention, much less attempt to rebut, those cases.  Nor can Defendants avoid the Servicing Guides and MERS System Rules of Membership that authorize assignments of the deed of trust in the course of servicing transfers, transferring both servicing rights and the status of beneficiary of record, but not the note or any ownership interest.  *See* MSJ at 6-7, 26 (citing Fannie Mae Guide at F-1-14; Freddie Mac Guide at 56.7).

SFR's discussion of the assignment language is nothing more than the creation of a straw man, contending that Plaintiffs argue that the Court should "disregard language in recorded DOT assignments" or that "assignments have nothing to do with owning a deed of trust."  SFR Opp. at 3-4, 24.  SFR mischaracterizes Plaintiffs' argument in this case and in the related cases that SFR cites.  Plaintiffs do not argue that an assignment of a deed of trust lacks meaning.  Such assignments effectuate a change the identity of the beneficiary of record and may reflect a change in the entity

entitled to service the loan, and thus the entity to whom a borrower should submit mortgage payments.  An assignment of a deed of trust might also reflect a change in ownership in circumstances where the owner of a loan, rather than a servicer, transfers the deed of trust to an entity that does not serve as the original owner's servicer or nominee.  But when an Enterprise's servicer or nominee assigns a deed of trust to a new servicer or nominee, that assignment does not disturb the continuing ownership interest of the Enterprise.  This is the rule under the Restatement approach incorporated into Nevada law.

### D. Defendants' Objections to Plaintiffs' Evidence Fail as a Matter of Law

Defendants also make a variety of objections to Plaintiffs' evidence supporting summary judgment, none of which withstand scrutiny.  *First*, SFR challenges any use of the recorded assignments of the Deeds of Trust by contending that Plaintiffs have called the assignments "irrelevant" in briefing related cases.  *See* SFR Opp. at 5.  This argument fails because Plaintiffs never argued that the assignments are irrelevant.  Rather, Plaintiffs argued in those related cases, as they do here, that assignments between two servicers or between a nominee or servicer does not effectuate a transfer of ownership despite sometimes overbroad language purporting to transfer interests that the transferor does not have.  This does not render assignments of deeds of trust meaningless, as they still reflect changes of the beneficiary of record.  Furthermore, when MERS or a servicer assigns a deed of trust to the Enterprise that had previously purchased the loan, the Enterprise becomes beneficiary of record in addition to owner of the loan.

*Second*, Defendants appear to doubt the admissibility of the Enterprise's database records as evidence of their purchase of the loans, contending that only a mortgage's purchase and sale agreement could satisfy this role.  *See, e.g.*, SFR Opp. at 5-6.  But the evidence Plaintiffs provided are business records from the Enterprises' databases that are used to keep track of the millions of loans that the Enterprises own, and are admissible under the business records rule.  *See* Exhibits to Meyer Decl. (Dkt. No.70-3); Exhibits to Curcio Decl. (Dkt. No. 100-1).  Pursuant to the business records exception to the hearsay rule, business records are deemed to have "unusual reliability . . . supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part

of a continuing job or occupation."  Fed. R. Evid. 803 (1972 advisory committee notes).  This rule

allows business records to be introduced as evidence for the truth of their contents, *Malek v. Fed.*

*Ins. Co.*, 994 F.2d 49, 53 (2d Cir. 1993), and provided that a qualified witness has established the

requirements for the exception, "the burden is on the opponent to show that the source of

information or the method or circumstances of preparation indicate a lack of trustworthiness."  Fed.

R. Evid. 803 (2014 advisory committee notes).[7]  Indeed, this Court and others in this District have

relied on precisely this same type of evidence—affidavits from employees of Fannie Mae or

Freddie Mac, attaching business records—as sufficient evidence on summary judgment of

ownership of the secured loan and deed of trust.  *See* MSJ at 19 (collecting cases).

A contrary rule, that a party must produce original hard copy records instead of the business

records that it routinely uses to track voluminous information, would "ignore[] the realities of

modern business litigation, where many business records are kept in databases, and parties query

these databases in order to provide responses to discovery requests."  *Health All. Network, Inc. v.*

*Cont'l Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007) *aff'd*, 294 F. App'x 680 (2d Cir. 2008).

Thus, courts routinely dismiss challenges to database records of financial institutions as evidence of

facts about the loans they own or service.  *See, e.g.*, *Curley v. Wells Fargo & Co.*, No. 13-CV-

03805 NC, 2015 WL 4623658, at *4 (N.D. Cal. July 31, 2015) (finding admissible testimony from a

bank employee supported by the bank's business records); *Bever v. Cal-W. Reconveyance Corp.*,

No. 1:11-CV-1584 AWI SKO, 2014 WL 5500940, at *7 (E.D. Cal. Oct. 30, 2014) (same).

Defendants' attempts to undermine Plaintiffs' reliance on these business records fail.  *Adobe*

*Systems, Inc. v. Christensen*, 2015 WL 9487887 (9th Cir. 2015) (cited by SFR Opp. at 6),

disapproved of template licensing agreements in the place of evidence of actual license agreements.

Here, Plaintiffs do not offer evidence of template note or deed-of-trust instruments that do not tie to

a particular property, which would be the equivalent to the documents evaluated in *Adobe*.  Instead,

Plaintiffs have provided the Court with contemporaneously maintained business records reflecting

the Enterprises ownership of the loans corresponding to the specific Properties owned by the named

---

[7]     Defendants do not dispute the reliability of the Enterprises' business records.

13

Plaintiffs.  Nor are the business records "summary documents" governed by Federal Rule of Evidence 1006, which requires that a party make "originals" available when their evidence is in the form of "a summary, chart, or calculation."  *See* SFR Opp. at 4.  But "evidence that has been compiled from a computer database is also admissible as a business record, provided it meets the criteria of [Federal] Rule [of Evidence] 803(6)."  *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009).  When computer database information is the business record itself, "not summaries of other evidence . . . Rule 1006 does not apply."  *Id.* at 1046.

*Finally*, Defendants' objections to the Enterprises' Servicing Guides similarly fail.  As Plaintiffs noted in their Opening Brief, the Court may take judicial notice of the Servicing Guides.  *See* MSJ at 5 n.3, 6 n.4.  Furthermore, the Meyer and Curcio Declarations, and the terms of the Servicing Guides themselves, establish that they apply to *all* of the Enterprises' Servicers.  *See id.* at 5, 6.

## II.    The Federal Foreclosure Bar Preempts Contrary State Law

This Court and others in this District have already held that the Federal Foreclosure Bar preempts the State Foreclosure Statute insofar as it would otherwise permit the HOA's foreclosure of its superpriority lien to extinguish the Enterprises' interest in property while they are under FHFA's conservatorship.  *See supra* at 1 n.2.  SFR persists in arguing that there can be neither express nor conflict preemption because the Federal Foreclosure Bar does not function automatically, as the law allows FHFA to "consent" to the extinguishment of its property rights.  SFR Reply at 10-12, 15-19.  SFR is incorrect; there is no condition attached to the timing and effectiveness of the statutory prohibition effected by the Federal Foreclosure Bar.  While FHFA may consent to the extinguishment of its property rights, this is not a condition precedent to the statutes' operation.  Rather, the Federal Foreclosure Bar gives the Conservator the option to forego the protection that Congress has extended.

SFR's citation to *Bank of Manhattan N.A. v. FDIC*, 778 F.3d 1133 (9th Cir. 2015), to argue that Congress did not intend to preempt state contract law does not support its argument.  *See* SFR Reply at 19.  This case does not involve the preemption of private contracts.  What the Federal Foreclosure Bar preempts—HOA foreclosure sales' purported extinguishment of deeds of trust—is

1  the product of state statutory law, not contract.  The Enterprises do not have a contractual

2  relationship with HOAs or the purchasers of property at HOA foreclosure sales that would permit

3  HOA foreclosure sales to extinguish their liens.

4  **III.   Defendants' Due Process Argument is Without Basis in Law or Fact**

5        As described in Plaintiffs' Counter-Motion for Summary Judgment, any argument that the

6  buyer at an HOA foreclosure sale has been deprived of a property interest has been rejected by other

7  courts in this District on two grounds.  *First*, the Federal Foreclosure Bar does not deprive the

8  purchaser at the HOA Sale of any property interest.  By operation of the legal regime prevailing at

9  the time of the HOA Sales, Defendants *never* acquired "free and clear" title to the properties.

10  Instead, Defendants acquired an interest in the properties subject to the Enterprises' interest.

11  Defendants were thus prevented from taking away the Enterprises' property interests, not deprived

12  of a property interest to which the protections of due process could apply.

13        *Second*, it is *the statute itself* that prevented Defendants from extinguishing the Enterprises'

14  property interests, as that protection works automatically.  No event "adjusted" the Defendants'

15  property rights after the HOA Sales occurred.  Therefore, the only possible procedural due process

16  challenge Defendants can raise must be to Congress's passage of Section 4617(j)(3), a challenge

17  that fails because under the legislative acts doctrine, Congress's enactment of the law provided the

18  HOA purchases with all the process to which they were due.  *See, e.g.*, *Skylights*, 2015 WL

19  3887061, at *7.

20        Defendants fail to refute these two points other than by repeating the arguments from their

21  Motion to Dismiss.  Chiefly, Defendants continue to insist, incorrectly, that Enterprise property is

22  entitled to no protection unless and until FHFA reviews and declines to consent to the action that

23  would effect a property's "levy, attachment, garnishment, foreclosure, or sale."  12 U.S.C.

24  § 4617(j)(3).  Indeed, SFR insists, without any basis in the record, that FHFA makes these decisions

25  on an "individualized … case-by-case, mortgage-by-mortgage, foreclosure-by-foreclosure basis."

26  SFR Reply at 6.  This would make the protection of the Federal Foreclosure Bar toothless unless

27  FHFA were to continuously monitor each potential HOA Sale and any other potential action that

28  could affect the Enterprises' property interests, including the millions of loans they own nationwide.

HERA provides no support for the inference that Congress intended to condition the operation of the Federal Foreclosure Bar on such a burdensome procedure; to the contrary, its text makes clear that the protection is automatic and requires no such herculean efforts.  *See Beal Bank, SSB v. Nassau Cty.*, 973 F. Supp. 130, 133 (E.D.N.Y. 1997) (evaluating the FDIC's similar property protection statute and concluding Congress did not intend for the FDIC to make individual decisions for that protection to be effective).  Without this misconstruction of the Federal Foreclosure Bar, Defendants' due process arguments fail.

The cases cited to by SFR on pages 3-4 of their reply brief fail to support their argument for the same reason *Ralls Corp. v. CFIUS* was unhelpful to SFR in its Motion to Dismiss.  In each of these cases, the parties complaining of a due process violation had already acquired a property interest before state action changed the legal regime that purported to take away that interest.  *See* MSJ at 32 (citing 758 F.3d 296 (D.C. Cir. 2014)).  For example, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993), concerned a civil forfeiture law that would deprive a homeowner of a property that the homeowner already owned prior to any seizure.  *See id.* at 47-48.  None of these cases consider a statute that, as here, protects one party's property from being extinguished by a complainant *prior* to the complainant's acquisition of any interest in the property.

## IV.    All Properties that Meet the Definition in the Complaint Qualify as Class Properties, Including Those Sold in HOA Sales that the Ombudsman Records Omit

LVDG contends that certain of the Properties cannot be Class Properties because they were not identified in the chart that matched the Enterprises' business records on the loans they owned and the Ombudsman's data identifying properties sold at HOA foreclosure sales.  *See* LVDG Opp. at 10-11.  The omission of these properties from the chart does not create a genuine issue of material fact for summary judgment.  Indeed, that chart was used to support Plaintiffs' motion for class certification and was not filed as evidence to establish any fact required for summary judgment.

As explained in the Supplemental Declaration of Michael Johnson (Dkt. 99-1), the Ombudsman's records are the most complete source of data concerning HOA sales that Plaintiffs have identified, but the Ombudsman records appear to be underinclusive, omitting some properties

that were in fact sold at HOA sales.  LVDG does not deny that the properties it refers to, such as the Sanibel Bay Street Property, were subject to HOA sales.  Therefore, these properties, and others that were in fact the subject of an HOA sale though they did not appear in the Ombudsman's data, are within the class definition set forth in the Corrected First Amended Complaint.

That some of the Properties were not included in the matching chart attached to the class certification briefing is thus of no moment.  The chart does not serve as the definitive list of class properties, but instead assists in identifying potential class members (*i.e.*, the purported owners of class properties).  That a property was subject to an HOA sale that was never logged by the Ombudsman does not change whether the Federal Foreclosure Bar would prevent the extinguishment of an Enterprise lien on that property.

## V.     LVDG's Counter-motion for Rule 56(d) Relief Should be Denied.

Defendant LVDG asserts that genuine factual disputes preclude summary judgment, and seeks to take discovery under Rule 56(d).  LVDG Counter Mtn. (Dkt. 94) at 10-14.  LVDG enumerates four purported disputes: 1) Whether the Enterprises' property interests can be discerned from the recorded title instruments; 2) Whether boilerplate language in certain Deed of Trust assignments suggests that the Enterprises did not maintain ownership of the underlying loans; 3) Whether the absence of certain properties from the Ombudsman's HOA-sale data creates an unspecified "question of material fact";[8] and 4) Whether any of the loans corresponding to Defendants' property were securitized.  *Id.*

Despite identifying four purported factual disputes, LVDG's supporting declaration—a required element for Rule 56(d) relief—omits any specific mention of the first three.  *See* Rhoda Decl. (Dkt. 95-2).  Accordingly, the only discovery LVDG appears to affirmatively seek for purposes of the pending summary judgment motions concerns securitization.  Plaintiffs  explain *supra* (at pp. 2-10) why securitization is immaterial in the context of this action.  The discovery

---

[8]     LVDG cannot and does not contend that any of the omitted properties was not in fact the subject of a completed HOA sale.

LVDG seeks is therefore entirely irrelevant and unavailable under Rule 56(d), Rule 26, or any other Rule.

However, none of the other three purported factual disputes is both genuine and material. Plaintiffs explain supra (at pp.10-11) why the fact that the record beneficiary of the Deeds of Trust may, in some instances, have been MERS or an Enterprise's servicer (as the Enterprises' evidence undisputedly establishes) is immaterial. Plaintiffs explain supra (at pp. 11-12) why the language of the Deed of Trust assignments LVDG presents does not support any reasonable inference that anyone other than the Enterprises owned the corresponding loans. Plaintiffs explain supra (at pp. 16-17) that the presence or absence of any particular property from the Ombudsman's data—which is the most comprehensive compilation available of properties that have been the subject of HOA foreclosure sales—does not affect whether the property falls within the class definition pled in the Corrected First Amended Complaint.[9]

///

///

///

///

///

///

///

///

///

///

---

[9]   LVDG is simply wrong to suggest that there is any "omission of these properties from [the Enterprises'] own data." *See* LVDG Countermtn. at 11. As Plaintiffs explain, the data identifying properties subject to completed HOA sales comes from the Ombudsman's files, not the Enterprises' data. See supra at 16-17.

**CONCLUSION**

For the reasons stated in their Counter-Motion for Summary Judgment and in this reply brief, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss, grant Plaintiffs' Motion for Summary Judgment on all claims; and enter declaratory judgment in Plaintiffs' favor.

DATED this 8th day of February, 2016.

**FENNEMORE CRAIG, P.C.**

By:   /s/   Leslie Bryan Hart
    Leslie Bryan Hart, Esq. (SBN 4932)
    John D. Tennert, Esq. (SBN 11728)
    300 E. Second St., Suite 1510
    Reno, Nevada 89501
    Tel: 775-788-2228  Fax: 775-788-2229
    lhart@fclaw.com; jtennert@fclaw.com
*Attorneys for Plaintiffs Federal Housing Financing Agency and Federal Home Loan Mortgage Corporation*

**ARNOLD & PORTER LLP**
    (Admitted *Pro Hac Vice*)
    David B. Bergman, Esq.
    Elliott Mogul, Esq.

*Attorneys for Plaintiff Federal Housing Financing Agency*

**SNELL & WILMER LLP**

By:   /s/   Amy F. Sorenson
    Amy F. Sorenson, Esq. (SBN 12495)
    Robin E. Perkins, Esq. (SBN 9891)
    3883 Howard Hughes Pkwy, Suite 1100
    Las Vegas, NV 89169
    Tel:  702-784-5200 Fax: 702-784-5252
    asorenson@swlaw.com,
    rperkins@swlaw.com
*Attorneys for Plaintiff Federal National Mortgage Association*

**MCGUIRE WOODS LLP**
    (Admitted *Pro Hac Vice*)
    John H. Maddock III, Esq.
    Tennille J. Checkovich, Esq.
    Michael W. Stark, Esq.
*Attorneys for Plaintiff Federal Home Loan Mortgage Corporation*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on the 8th day of February, 2016, a true and correct copy of **PLAINTIFFS' REPLY IN SUPPORT OF THEIR COUNTERMOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT LVDG'S COUNTER-MOTION FOR RULE 56(d) RELIEF (DKT #95),** was transmitted electronically through the Court's e-filing electronic notice system to the attorney(s) associated with this case.  If electronic notice is not indicated through the court's e-filing system, then a true and correct <u>paper</u> copy of the foregoing document was delivered via U.S. Mail.

Jory C. Garabedian  jgarabedian@wrightlegal.net

Jacqueline A. Gilbert   Jackie@KGElegal.com

David Bergman     David.Bergman@aporter.com

Diana S. Cline Ebron     diana@KGElegalcom

Howard C. Kim     howard@KGElegal.com

Jesse Panoff     jesse@KGElegal.com

Roger P. Croteau     croteaulaw@croteaulaw.com

Dana Jonathon Nitz     dnitz@wrightlegal.net

Robin E Perkins     rperkins@swlaw.com

Timothy Rhoda     croteaulaw@croteaulaw.com

　　　　　　　　　　　　　　　　　/s/   Pamela Carmon
　　　　　　　　　　　　　　　Pamela Carmon