**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, in its capacity as Conservator of The Federal National Mortgage Association and Federal Home Loan Mortgage Corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION; and FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada domestic limited liability company; NEVADA NEW BUILDS, LLC, a Nevada domestic limited liability company; and LAS VEGAS DEVELOPMENT GROUP, LLC, a Nevada domestic limited liability company,<br><br>　　　　　　　Defendants. | Case No.: 2:15-cv-01338-GMN-CWH<br><br>**ORDER** |

Pending before the Court is the Motion to Certify Class (ECF No. 23), Motion for Summary Judgment (ECF No. 70), and Motion to Seal (ECF No. 98) filed by Plaintiffs Federal Housing Agency ("FHFA"), Federal National Mortgage Association ("Fannie Mae"), and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "Plaintiffs"). Additionally, pending before the Court is the Motion to Dismiss (ECF No. 46) and Motion to Sever (ECF No. 48) filed by Defendant SFR Investments Pool 1, LLC ("SFR"). Moreover, pending before the Court is the Countermotion for 56(d) Relief (ECF No. 95) filed by Defendant Las Vegas Development Group, LLC ("Las Vegas Development"). All of the instant motions have been fully briefed.

## I.   BACKGROUND

The present action involves the interplay between Nevada Revised Statutes § 116.3116 and 12 U.S.C. § 4617 as it relates to the parties' interests in real property located at the following locations: (1) 1633 Xanadu Drive, Henderson, Nevada (the "Xanadu Drive Property"); (2) 7671 Mocorito Avenue, Las Vegas, Nevada (the "Mocorito Avenue Property"); (3) 5321 Clover Blossom Court, North Las Vegas, Nevada (the "Clover Blossom Court Property"); (4) 2612 Bahama Point Avenue, North Las Vegas, Nevada (the "Bahama Point Avenue Property"); (5) 1577 Pasture Lane, Las Vegas, Nevada (the "Pasture Lane Property") (collectively, the "Properties").[1]

### A. FHFA's Conservatorship Over Fannie Mae and Freddie Mac

In July of 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, *codified at* 12 U.S.C. § 4511 *et seq.*, which established FHFA for the purpose of regulating Fannie Mae, Freddie Mac, and the twelve Federal Home Loan Banks. In September of 2008, FHFA placed Fannie Mae and Freddie Mac into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs." 12 U.S.C. § 4617(a)(2). As conservator, FHFA immediately succeeded to "all rights, titles, powers, and privileges" of Fannie Mae and Freddie Mac. 12 U.S.C. § 4617(b)(2)(A)(i).

In HERA, Congress granted FHFA numerous privileges and exemptions to carry out its statutory functions when acting as conservator of Fannie Mae and Freddie Mac. Among these is a statutory "exemption" captioned "Property protection" providing that when acting as conservator, "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." 12 U.S.C. § 4617(j)(3).

---

[1] Because this Order severs Plaintiffs' claims against Defendants Nevada New Builds and Las Vegas Development Group, the Court does not recite facts that pertain to these severed Defendants.

**B. The Xanadu Drive Property**

On February 27, 2006, the Xanadu Drive Property was secured by a deed of trust. (Xanadu Deed of Trust, Ex. 20 to Plaintiffs' Request for Judicial Notice, ECF No. 72-2).[2] The Xanadu Deed of Trust names Washington Mutual Bank, FA ("WAMU") as the beneficiary and California Reconveyance Company as the trustee. (*Id.*). Freddie Mac acquired ownership of a mortgage loan secured by the Xanadu Drive Property on April 11, 2006 and has owned it ever since. (*See* Meyer Decl. ¶ 16(a), ECF No. 70-1; Exs. A–B to Meyer Decl., ECF No. 70-1).

On September 25, 2008, WAMU transferred its beneficial interest to JP Morgan Chase ("Chase") by operation of law as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)(2)(G)(i)(II), which was memorialized by a corporate assignment of deed of trust on May 1, 2013. (Xanadu Corp. Assignment of Deed of Trust, Ex. 21 to Plaintiffs' Request for Judicial Notice, ECF No. 72-2). SFR purchased the Xanadu Drive Property as the highest bidder at an HOA foreclosure sale on July 11, 2012. (Xanadu Trustee's Deed Upon Sale, Ex. 22 to Plaintiffs' Request for Judicial Notice, ECF No. 72-2).

**C. The Mocorito Avenue Property**

On April 11, 2006, the Mocorito Avenue Property was secured by a deed of trust. (Mocorito Deed of Trust, Ex. 23 to Plaintiffs' Request for Judicial Notice, ECF Nos. 72-2–72-3). The Mocorito Deed of Trust names Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and Landam as the trustee. (*Id.*). Freddie Mac acquired ownership of a mortgage loan secured by the Mocorito Avenue Property on May 11, 2006 and has owned it ever since. (*See* Meyer Decl. ¶ 16(d); Exs. C–D to Meyer Decl., ECF No. 100-1).

---

[2] The Court takes judicial notice of Exhibits 2–6, 20–35 (ECF Nos. 72-1–72-4) of Plaintiffs' Request for Judicial Notice (ECF No. 72). *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Each of these documents is publicly recorded in the Clark County Recorder's office.

On December 23, 2011, MERS assigned the Mocorito Deed of Trust to Ocwen Loan Servicing, LLC ("Ocwen"). (Mocorito Assignment of Deed of Trust, Ex. 25 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3).  Furthermore, on May 31, 2013, Ocwen assigned its beneficial interest to Nationstar Mortgage, LLC ("Nationstar"). (Mocorito Corporate Assignment of Deed of Trust, Ex. 26 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3). SFR purchased the Mocorito Avenue Property as the highest bidder at an HOA foreclosure sale on July 9, 2014. (Mocorito Trustee's Deed Upon Sale, Ex. 27 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3).

### D. The Clover Blossom Court Property

On December 15, 2005, the Clover Blossom Court Property was secured by a deed of trust. (Clover Blossom Deed of Trust, Ex. 28 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3).  The Clover Blossom Deed of Trust names MERS as the beneficiary and First American Title Insurance Company as the trustee. (*Id.*).  Fannie Mae acquired ownership of a mortgage loan secured by the Clover Blossom Court Property on February 1, 2006 and has owned it ever since. (*See* Curcio Decl. ¶ 4, ECF No. 70-3; Ex. A to Curcio Decl., ECF No. 70-3).

On December 8, 2011, MERS assigned the Clover Blossom Deed of Trust to Bank of America, N.A. ("BANA"). (Clover Blossom Assignment of Deed of Trust, Ex. 29 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3).  SFR purchased the Clover Blossom Court Property as the highest bidder at an HOA foreclosure sale on July 22, 2013. (Clover Blossom Trustee's Deed Upon Sale, Ex. 30 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3).

### E. The Bahama Point Avenue Property

On May 30, 2006, the Bahama Point Avenue Property was secured by a deed of trust. (Bahama Point Deed of Trust, Ex. 31 to Plaintiffs' Request for Judicial Notice, ECF Nos. 72-3–72-4).  The Bahama Point Deed of Trust names MERS as the beneficiary and National Alliance

Title ("National Alliance") as the trustee. (*Id.*). Fannie Mae acquired ownership of a mortgage loan secured by the Bahama Point Avenue Property on July 1, 2006 and has owned it ever since. (*See* Curcio Decl. ¶ 5; Ex. B to Curcio Decl., ECF No. 70-3).

On February 3, 2012, MERS assigned the Bahama Point Deed of Trust to BANA. (Bahama Point Assignment of Deed of Trust, Ex. 33 to Plaintiffs' Request for Judicial Notice, ECF No. 72-4). Furthermore, on July 10, 2013, BANA assigned the Bahama Point Deed of Trust to EverBank. (Bahama Point Assignment of Deed of Trust, Ex. 34 to Plaintiffs' Request for Judicial Notice, ECF No. 72-4). SFR purchased the Bahama Point Avenue Property as the highest bidder at an HOA foreclosure sale on July 16, 2013. (Bahama Point Trustee's Deed Upon Sale, Ex. 35 to Plaintiffs' Request for Judicial Notice, ECF No. 72-4).

**F. The Pasture Lane Property**

On September 28, 2006, the Pasture Lane Property was secured by a deed of trust. (Pasture Deed of Trust, Ex. 2 to Plaintiffs' Request for Judicial Notice, ECF No. 72-1). The Pasture Deed of Trust names MERS as the beneficiary and National Alliance as the trustee. (*Id.*). Fannie Mae acquired ownership of a mortgage loan secured by the Bahama Point Avenue Property on December 1, 2006 and has owned it ever since. (*See* Curcio Decl. ¶ 6; Ex. C to Curcio Decl., ECF No. 70-3).

On September 20, 2011, MERS assigned the Pasture Deed of Trust to BANA. (Pasture Corporation Assignment of Deed of Trust, Ex. 3 to Plaintiffs' Request for Judicial Notice, ECF No. 72-1). Furthermore, on June 6, 2013, BANA assigned the Pasture Deed of Trust to Fannie Mae. (Pasture Corporation Assignment of Deed of Trust, Ex. 4 to Plaintiffs' Request for Judicial Notice, ECF No. 72-1). SFR purchased the Pasture Lane Property as the highest bidder at an HOA foreclosure sale on September 11, 2013. (Pasture Trustee's Deed Upon Sale, Ex. 6 to Plaintiffs' Request for Judicial Notice, ECF No. 72-1).

## II. MOTION TO CERTIFY CLASS[3]

### A. Legal Standard

As a threshold matter, a party seeking class certification must prove that the class is ascertainable, meaning that membership in the class can be determined by reference to objective criteria. *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014)). If this threshold is met, a court then turns to Rule 23.

Rule 23 of the Federal Rules of Civil Procedure outlines the conditions for establishing a class action. Specifically, the suit must satisfy each of the four criteria set out in subdivision (a), and fit into one of the three categories described in subdivision (b). *Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). The decision to grant or deny class certification is within the trial court's "wide discretion," being in the "best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman*, 623 F.3d at 712. However, a party seeking class certification "must affirmatively demonstrate his compliance with the Rule." *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, certification is proper only where the trial court has engaged in a rigorous analysis and found Rule 23 to be satisfied. *Id.* at 350–51.

Such rigorous analysis "[f]requently . . . entail[s] some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* at 351. Certifying a class "generally involves considerations that are enmeshed in the factual and legal issues comprising the

---

[3] Plaintiffs filed a Motion to Seal (ECF No. 98), asserting that a portion of Exhibit A to Plaintiffs' Reply to Motion to Certify Class contains confidential and sensitive financial information. (Mot. Seal 2:15–17). The Court finds that good cause exists to seal this document to protect this information, and grants Plaintiffs' Motion to Seal. However, because sealing Exhibit A (ECF No. 73-1) will result in Exhibit A being sealed in its entirety, Plaintiffs' shall file a corrected Exhibit A with the sealed portions redacted.

plaintiff's cause of action." *Id.*  Such overlap is not "unusual," but rather is "a familiar feature of litigation." *Id.* at 351–52.

### B. Discussion

"In order for a proposed class to satisfy the ascertainability requirement, membership must be determinable from objective, rather than subjective, criteria." *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d at 1089 (citing *Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).  The proposed class definition should "describe[ ] a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 558 (C.D. Cal. 2012).  Determination of class membership should not entail detailed individual inquiries. 3 William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2013).  Similarly, class definitions based on the merits of individual members' claims are not sufficiently definite. *Id.* § 3:6; *Vandervort*, 287 F.R.D. at 557 ("A class must be ascertainable without inquiring into the merits of the case.").  The inquiry into class membership must not require holding countless hearings resembling "mini-trials." Newberg on Class Actions § 3:6.

Here, Plaintiffs define the proposed class as a defendant class of "current record owners—other than Fannie Mae, Freddie Mac, or the Conservator—of Units as to which: (1) HOA Foreclosure Sales have been or will be completed on or after September 18, 2009, (2) an Enterprise Lien had attached and had not been satisfied at the time of the applicable HOA Foreclosure Sale, and (3) the Court may assume and exercise in rem jurisdiction." (FAC ¶ 14, ECF No. 22).  Defendant SFR asserts that "this case's merits . . . hinge on the extent to which Plaintiffs owned an 'Enterprise Lien' . . . 'at the time of the HOA foreclosure sale.' As a result, the class definition's reliance on the phrase 'Enterprise Lien' means that the class definition impermissibly implicates the merits of this case." (SFR's Resp. 15:13–16, ECF No. 58).  The Court agrees.

One of the primary disputes in this case, along with other cases implicating section 4617(j)(3), pertains to whether FHFA held an interest in the property at issue at the time of an HOA foreclosure sale. (*See* SFR's Resp. to Mot. Summ. J., ECF No. 87). *See also Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1157–58 (D. Nev. 2015); *Berezovsky v. Moniz*, 2:15-cv-01186-GMN-GWF, 2015 WL 8780198 (D. Nev. Dec. 15, 2015). This issue is dependent upon a highly individualized factual inquiry. Therefore, the Court finds that such an inquiry into class membership based upon Plaintiffs' proposed defined class would result in countless hearings resembling "mini-trials." Accordingly, because the Court finds that Plaintiffs' proposed class is not reasonably ascertainable, the Court denies Plaintiffs' Motion to Certify Class.

### III. MOTION TO SEVER

#### A. Legal Standard

Rule 20(a)(2) of the Federal Rules of Civil Procedure provides that, in order for more than one defendant to be joined together in an action, the defendants must meet two specific requirements: (1) the right to relief asserted against each defendant must arise out of or relate to the same transaction or occurrence or series of transactions or occurrences; and (2) a question of law or fact common to all defendants must arise in the action. "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (citing Fed. R. Civ. P. 21). If the district court chooses to sever the case, it may do so by dismissing "all but the first named [defendant] without prejudice to the institution of new, separate lawsuits [against] the dropped [defendants]." *Id.*

#### B. Discussion

Here, the Court finds that, while each of the Defendants purchased properties at HOA foreclosure sales, these entirely separate, though similar, events do not constitute a series of

transactions or occurrences. Accordingly, because the factual scenario related to each Defendant is different, severance of the misjoined Defendants is proper.

Since joinder of the Defendants is improper, the Court severs the case under Rule 21 of the Federal Rules of Civil Procedure. Rule 21 allows the Court to add or drop parties at any time on just terms. Here, the Court severs each Defendant from this case save the first named Defendant, SFR Investments Pool 1, LLC, and dismisses them without prejudice, to which Plaintiffs can reassert their separate claims in two separate, distinct actions.

## IV.   MOTION TO DISMISS

### A. Legal Standard

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id*. Similarly, "documents whose contents are alleged in a

complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B. Discussion**

In *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145 (D. Nev. 2015), the Court held that section 4617(j)(3) prohibits property of FHFA from being subject to a foreclosure without its consent, even if such foreclosure sale is held by an HOA pursuant to Nevada Revised Statutes § 116.3116. 112 F. Supp. 3d at 1158.  The Court reached this holding, addressing many objections related to, *inter alia*, preemption and due process violations. *Id.* at 1151–59.  In its Motion to Dismiss, Defendant SFR raises many objections to the application of section 4617(j)(3), which primarily relate to due process violations. (*See* Mot. Dismiss 5:5–17:3, ECF No. 46).  However, the Court finds no reason to overturn its prior holding in *Skylights*, and therefore, denies Defendant SFR's Motion to Dismiss.

## V. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–

24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B. Discussion**[4]

In the instant Motion for Summary Judgment, Plaintiffs requests that the Court declare that "12 U.S.C. § 4617(j)(3) preempts any Nevada law that would permit a foreclosure on a superpriority lien to extinguish a property interest of Fannie Mae or Freddie Mac while they are

---

[4] Because Defendant Las Vegas Development has been severed from this case, the Motion for 56(d) Relief (ECF No. 95) is denied as moot.

under FHFA's conservatorship," "the HOA Sale did not extinguish the Enterprises' interest in the Properties and thus did not convey the Properties free and clear to any Defendants," and "title to the Properties is quieted in either Fannie Mae's or Freddie Mac's favor insofar as the Defendants' interest, if any, is subject to the interest of the Enterprises or, if applicable, the interest of the Enterprises' successors." (*Id.* 45:6–14).

The Court addressed the applicability of 12 U.S.C. § 4617(j)(3) in *Skylights*. 112 F. Supp. 3d at 1159. After addressing many different arguments regarding the applicability of section 4617(j)(3), the Court held that the plain language of section 4617(j)(3) prohibits property of FHFA from being subject to a foreclosure without its consent. *Id.*

Here, the Court finds that FHFA held an interest in the Properties prior to the HOA foreclosure sales. First, because Chase was servicing the Xanadu Loan on behalf of Freddie Mac and acquired the beneficial interest in the Xanadu Deed of Trust on September 25, 2008, Freddie Mac has held an interest in the Xanadu Drive Property since at least September 25, 2008, which is prior to the HOA foreclosure sale on July 11, 2012. (*See* Exs. A–B to Meyer Decl., ECF No. 70-1; Xanadu Trustee's Deed Upon Sale, Ex. 22 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3). *See also* Restatement (Third) of Prop.: Mortgages § 5.4 cmt. c (explaining that, when a servicer of a loan held by an institutional purchaser of the loan is assigned the beneficial interest of the mortgage, "[i]t is clear in this situation that the owner of both the note and mortgage is the investor and not the servicer.").

Second, because Nationstar was servicing the Mocorito Loan on behalf of Freddie Mac and acquired the beneficial interest in the Mocorito Deed of Trust on May 31, 2013, Freddie Mac has held an interest in the Mocorito Avenue Property since at least May 31, 2013, which is prior to the HOA foreclosure sale on July 9, 2014. (*See* Exs. C–D to Meyer Decl., ECF No. 100-1; Mocorito Trustee's Deed Upon Sale, Ex. 27 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3).

Third, because BANA was servicing the Clover Blossom Loan on behalf of Fannie Mae and acquired the beneficial interest in the Clover Blossom Deed of Trust on December 8, 2011, Fannie Mae has held an interest in the Clover Blossom Court Property since at least December 8, 2013, which is prior to the HOA foreclosure sale on July 22, 2013. (*See* Ex. A to Curcio Decl., ECF No. 70-3; Clover Blossom Trustee's Deed Upon Sale, Ex. 30 to Plaintiffs' Request for Judicial Notice, ECF No. 72-3).

Fourth, because EverBank was servicing the Bahama Point Loan on behalf of Fannie Mae and acquired the beneficial interest in the Bahama Point Deed of Trust on July 10, 2013, Fannie Mae has held an interest in the Bahama Point Avenue Property since at least July 10, 2013, which is prior to the HOA foreclosure sale on July 16, 2013. (*See* Ex. B to Curcio Decl., ECF No. 70-3; Bahama Point Trustee's Deed Upon Sale, Ex. 35 to Plaintiffs' Request for Judicial Notice, ECF No. 72-4).

Fifth, because Fannie Mae was assigned the Pasture Deed of Trust on June 6, 2013, Fannie Mae has held an interest in the Pasture Lane Property since at least June 6, 2013, which is prior to the HOA foreclosure sale on September 11, 2013. (*See* Ex. C to Curcio Decl., ECF No. 70-3; Pasture Corporation Assignment of Deed of Trust, Ex. 4 to Plaintiffs' Request for Judicial Notice, ECF No. 72-1; Pasture Trustee's Deed Upon Sale, Ex. 6 to Plaintiffs' Request for Judicial Notice, ECF No. 72-1).

Accordingly, because FHFA held an interest in the deeds of trust of the Properties as conservator for Freddie Mac and Fannie Mae prior to the particular HOA foreclosures, section 4617(j)(3) prevents the HOA's foreclosure on the Properties from extinguishing the deeds of trust of the Properties.

## VI.  CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Certify Class (ECF No. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal (ECF No. 98) is **GRANTED**. Accordingly, the Clerk of the Court is instructed to seal Exhibit A (ECF No. 73-1) to Plaintiffs' Response to Motion to Certify Class (ECF No. 73). Moreover, Plaintiffs shall file a corrected, unsealed Exhibit A on the docket with the confidential information redacted by **May 26, 2016**.

**IT IS FURTHER ORDERED** that Defendant SFR's Motion to Sever (ECF No. 48) is **GRANTED**, and the claims asserted against Defendants Nevada New Builds, LLC and Las Vegas Development Group, LLC are **SEVERED** from this case. Plaintiffs shall have until **May 26, 2016**, to file separate cases against each of the severed Defendants. Once these two new cases are filed, the Clerk of the Court will assign them to the undersigned district judge and Magistrate Judge Carl W. Hoffman.

**IT IS FURTHER ORDERED** that Defendant SFR's Motion to Dismiss (ECF No. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Las Vegas Development's Motion for 56(d) Relief (ECF No. 95) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF No. 70) is **GRANTED**. The Court finds that 12 U.S.C. § 4617(j)(3) preempts Nevada Revised Statutes § 116.3116 to the extent that a homeowner association's foreclosure of its super-priority lien cannot extinguish a property interest of Fannie Mae or Freddie Mac while those entities are under FHFA's conservatorship. Accordingly, the HOA foreclosure sales on the Properties did not extinguish Fannie Mae's or Freddie Mac's interests in the Properties and thus did not convey the Properties free and clear of their deeds of trusts to SFR. Moreover, title to the Properties is quieted in either Fannie Mae's or Freddie Mac's favor insofar as SFR's interest, if any, is subject to the interest of Fannie Mae or Freddie Mac or, if applicable, the interest of Fannie Mae's or Freddie Mac's successors.

1  **IT IS FURTHER ORDERED** that Plaintiffs' are granted summary judgment on all of
2  their claims.
3  The Clerk of the Court shall enter judgment accordingly and close this case.
4  **DATED** this __30__ day of April, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge